2007 UT App 375

**LPI SERVICES and Travelers Indemnity Co. of Connecticut, Petitioners,**

v.

**LABOR COMMISSION and Michael McGee, Respondents.**

No. 20070077–CA.

Court of Appeals of Utah.

Nov. 23, 2007.

Mark R. Sumsion and Michael K. Woolley, Salt Lake City, for Petitioners.

Richard R. Burke and Alan L. Hennebold, Salt Lake City, for Respondents.

Before BENCH, P.J., GREENWOOD, Associate P.J., and BILLINGS, J.

## OPINION

BILLINGS, Judge:

¶ 1 LPI Services and Travelers Indemnity Co. of Connecticut (LPI) seek review of the Utah Labor Commission's (the Commission) award of workers' compensation permanent total disability benefits to Michael McGee. Specifically, LPI asserts that rule 612–1– 10.D.1, *see* Utah Admin. Code r. 612–1– 10.D.1, upon which the Commission relied, conflicts with the statutory standard for awarding workers' compensation benefits, *see* Utah Code Ann. § 34A–2–413(1)(c)(iv) (Supp. 2007).[1] We affirm.

## BACKGROUND

¶ 2 On July 4, 2001, McGee was involved in an industrial accident while in the course and scope of his employment with LPI. Specifically, McGee was assisting four men with moving a 600–pound motor when he injured his lower back and shoulder. Shortly thereafter, McGee began seeing various doctors for medical examinations, tests, procedures, and physical therapy. In November 2002, McGee filed an application for workers' compensation benefits, asserting claims for medical expenses, recommended medical care, temporary total disability compensation, and permanent partial disability compensation. Later, McGee filed an amended application seeking permanent total disability compensation.

¶ 3 In October 2003, an administrative hearing was held before the Commission. At that hearing, LPI identified several jobs that it asserted constituted gainful employment for McGee. However, the jobs available to McGee paid a wage lower than the state average weekly wage. During the hearing, the parties established that McGee earned a weekly wage of $17.50 per hour at the time of his injury. The average weekly wage for the State of Utah as of July 4, 2001, equaled $13.85 per hour. Thus, the administrative law judge (ALJ) determined that McGee's weekly wage exceeded the current state average weekly wage for the date of the injury.

¶ 4 Also during the October 2003 hearing, LPI's vocational expert testified that McGee was capable of working as a lens stylist at Lens Crafters with a starting weekly wage of $7.00 per hour, plus commissions of $2.50 per hour or more, and an income potential of between $12.00 and $13.00 per hour. He also testified that McGee could perform a car

---

1. We note that the changes between the current version of the statute and the 1997 version in effect at the time of the accident do not affect our analysis. *Compare* Utah Code Ann. § 34A–2–413 (Supp.1997), *with id.* § 34A–2–413 (Supp.2007). Therefore, we cite to the current version of the statute.

rental reservationist job with a starting weekly wage of $7.29 per hour, plus commissions of $2.50 per hour or more, and income potential of between $12.00 and $13.00 per hour.

¶ 5 The ALJ entered a tentative finding of permanent total disability on the basis that even though at least two other specific jobs were available to McGee, those jobs did not qualify as other work reasonably available to McGee. Specifically, the ALJ held that "[t]he two jobs located by [LPI's expert] as a lens stylist and car rental reservationist at most pa[y] $13.00 per hour, or less than the average weekly wage for the State of Utah as of July 4, 2001." Accordingly, the ALJ determined that because the weekly wage of these potential jobs was less than the state average weekly wage, there was not other employment reasonably available to McGee as of the hearing date.

¶ 6 LPI filed a timely motion for review, contesting the ALJ's finding that McGee is permanently and totally disabled. The primary argument asserted was that McGee could not be found permanently and totally disabled because gainful employment was available to him. On December 28, 2006, the Commission issued its order affirming the ALJ's decision. LPI now seeks review in this court.

### ISSUE AND STANDARD OF REVIEW

¶ 7 LPI argues that the Commission improperly promulgated and applied rule 612–1–10.D.1 of the Utah Administrative Code because it conflicts with Utah Code section 34A–2–413(1)(c)(iv). Specifically, LPI argues that the administrative rule improperly modifies the statutory definition of "other work reasonably available." Questions of statutory construction are matters of law, and we rely on a correction-of-error standard, giving no deference to an administrative agency's interpretation. *See Chris & Dick's Lumber & Hardware v. Tax Comm'n,* 791 P.2d 511, 513 (Utah 1990).

¶ 8 The Commission, however, identifies the issue in a different manner. It contends that the issue is whether the Commission has abused its discretion in interpreting the statutory language "other work reasonably available." Utah Code Ann. § 34A–2–413(1)(c)(iv) (Supp.2007); *see also King v. Industrial Comm'n,* 850 P.2d 1281, 1286 (Utah Ct.App. 1993) (noting that we will grant an agency discretion "when there is a grant of discretion to the agency concerning the language in question, either expressly made in the statute or implied from the statutory language" (internal quotation marks omitted)). We agree with the Commission's characterization of the issue and corresponding standard of review.

### ANALYSIS

¶ 9 The Utah Legislature has granted the Commission "the duty and the full power, jurisdiction, and authority to determine the facts and apply the law in [the Utah Labor Commission Act]." Utah Code Ann. § 34A–1–301 (2005). Section 34A–2–413(1)(c)(iv) reads, in pertinent part:

(c) To establish that an employee is permanently totally disabled the employee must prove by a preponderance of the evidence that:

. . . .

(iv) the employee cannot perform *other work reasonably available,* taking into consideration the employee's:

(A) age;

(B) education;

(C) past work experience;

(D) medical capacity; and

(E) residual functional capacity.

*Id.* § 34A–2–413(1) (Supp.2007) (emphasis added). To define the term "other work reasonably available," the Commission promulgated rule 612–1–10.D.1, which reads as follows:

1. . . . . Subject to medical restrictions and other provisions of the Act and rules, other work is reasonably available to a claimant if such work meets the following criteria:

a. The work is either within the distance that a resident of the claimant's community would consider to be a typical or acceptable commuting distance, or is within the distance the claimant was

traveling to work prior to his or her accident;

b. The work is regular, steady, and readily available; and

c. The work provides a gross income at least equivalent to:

(1) The current state average weekly wage, if at the time of the accident the claimant was earning more than the state average weekly wage then in effect; or

(2) The wage the claimant was earning at the time of the accident, if the employee was earning less than the state average weekly wage then in effect.

Utah Admin. Code r. 612–1–10.D.1.

¶ 10 LPI asserts that rule 612–1–10.D.1 adds factors that are not included in the statute. As such, LPI argues, rule 612–1–10.D.1 "is in excess of the administrative authority granted" in Utah Code section 34A–2–413 and it improperly "abridge[s], enlarge[s], extend[s,] or modif[ies the] statute." Conversely, the Commission argues that rule 612–1–10.D.1 simply interprets and applies the meaning of "other work reasonably available" as used in section 34A–2–413. *See* Utah Code Ann. § 34A–2–413(1)(c)(iv).

## I. Standard of Review

¶ 11 We first turn to the amount of deference we afford the Commission's interpretation and application of Utah Code section 34A–2–413. Accordingly, we look to our decision in *King v. Industrial Commission*, 850 P.2d 1281 (Utah Ct.App.1993), wherein we detailed the process for "deciding the amount of deference to grant an agency's interpretation or application of agency-specific statutory law," *id.* at 1286.

¶ 12 In *King*, we determined that "we grant deference only 'when there is a grant of discretion to the agency concerning the language in question, either expressly made in the statute or implied from the statutory language.' " *Id.* (quoting *Morton Int'l, Inc. v. Auditing Div. of Utah State Tax Comm'n*, 814 P.2d 581, 589 (Utah 1991)). We went on to explain the analytical framework for determining whether an agency's interpretation

and application of a statute is entitled to deference:

First, we determine whether the legislature explicitly granted deference to the agency to interpret or apply statutory language at issue. . . . If we find such a grant, we review under section 63–46b–16(4)(h)(i) for abuse of discretion. That is, we afford the agency some deference and assess whether its action is within the bounds of reasonableness.

Second, if we do not find an explicit grant of discretion, we examine the language of the statute and the statutory framework for an implicit grant of discretion. If the statutory language is broad and expansive or subject to numerous interpretations we will assume the legislature has chosen to defer to the policy making expertise of the agency and we will find an implicit grant of discretion and review the action under section 63–46b–16(4)(h)(i) for abuse of discretion.

*Id.* at 1291. " 'Absent a grant of discretion, a correction-of-error standard is used in reviewing an agency's interpretation or application of a statutory term.' " *Id.* at 1286 (quoting *Morton*, 814 P.2d at 588).

¶ 13 McGee argues that the Commission must be afforded discretion in interpreting and applying Utah Code section 34A–2–413 because the statute both explicitly and implicitly grants such discretion. First, McGee argues that the Act explicitly grants the Commission deference to interpret and apply the term "other work reasonably available" in Utah Code section 34A–2–413 because the introductory section of the Act grants the Commission "the duty and the full power, jurisdiction, and authority to determine the facts and apply the law" in the Act. *See* Utah Code Ann. § 34A–1–301. However, this grant of power and authority does not provide a general grant of discretion to the Commission for statutory interpretation. *See Esquivel v. Labor Comm'n*, 2000 UT 66, ¶ 18, 7 P.3d 777. Therefore, we turn to whether the Commission had an implicit grant of discretion to promulgate rule 612–1–10.D.1 interpreting "other work reasonably available."

¶ 14 In determining what constitutes an implicit grant of discretion, we note

that "[w]e can find implicit grants of discretion in 'broad and generalized' statutory language because such language indicates a legislative intent to delegate interpretative powers to the agency." *King*, 850 P.2d at 1287 (quoting *Morton*, 814 P.2d at 588). Essentially, "if we find there are multiple permissible interpretations of statutory language we must defer to the agency's policy choice." *Id.* Moreover, we also recognize "that consideration of an agency's expertise and experience is relevant in determining whether the agency should make the necessary policy choice and thus be granted deference." *Id.*

¶ 15 McGee argues that Utah Code section 34A–2–413 implicitly grants the Commission deference because the statute requires the Commission to determine whether other work is reasonably available for an injured worker. We agree. The Utah Legislature did not and has not defined what the term "reasonably" means in the context of this statute. *See* Utah Code Ann. § 34A–2–413(1)(c)(iv) (Supp.2007). Moreover, "reasonableness" is a broad, general, and subjective concept; its meaning depends on the context in which it is applied. Therefore, the legislature's use of the word "reasonably" in Utah Code section 34A–2–413 "bespeak[s] a legislative intent to delegate [its] interpretation to the [Commission]." *Morton*, 814 P.2d at 588.

¶ 16 Moreover, because "reasonably" is a broad and generalized term that has "multiple permissible interpretations," *King v. Industrial Commission*, 850 P.2d 1281, 1287 (Utah Ct.App.1993), the Commission's expertise and experience in making sound policy decisions is necessary to interpret the meaning of the phrase "other work reasonably available," Utah Code Ann. § 34A–2–413(1)(c)(iv) (Supp.2007). Accordingly, we review the Commission's interpretation of the statutory language "other work reasonably available," *see id.*, for an abuse of discretion.

## II. The Commission's Interpretation of Section 34A–2–413

¶ 17 To characterize an injured employee as "permanently totally disabled,"
the Commission must determine that "the employee cannot perform other work reasonably available." *Id.* § 34A–2–413. We note that "whether ... work is 'reasonably available' is a factual determination." *Martinez v. Media–Paymaster Plus*, 2007 UT 42, ¶ 32, 164 P.3d 384. We further note that the term "reasonably" implies a judgment informed by a set of facts. *See id.* A determination of what constitutes other work reasonably available necessarily requires the Commission to consider various factors, which the Commission categorizes in two ways: (1) the personal, physical characteristics of the injured employee, and (2) the prospective job market.

¶ 18 The first category focuses on the injured employee's actual ability to perform other work. Factors pertaining to this category are clearly stated in Utah Code section 34A–2–413 and include the injured worker's age, education, work experience, medical capacity, and functional capacity. *See* Utah Code Ann. § 34A–2–413(1)(c)(iv).

¶ 19 The second category—the prospective job market—and its related factors are addressed in rule 612–1–10.D.1. *See* Utah Admin. Code r. 612–1–10.D.1. The factors listed in rule 612–1–10 include wage, location, and status of the other available work. *See id.* We conclude that these factors are relevant and important to aid the Commission in determining whether work is reasonable. Thus, even though the second category of considerations are not specifically mentioned in the statute, the Commission is not prohibited from evaluating those considerations as well.

¶ 20 In promulgating rule 612–1–10.D.1, the Commission certainly considered the overall goal of workers' compensation and relied on its expertise and experience to determine what factors would best inform the meaning of the phrase "other work reasonably available." The Commission has an obligation to "liberally construe[ ] and appl[y] the Act to provide coverage and resolve any doubt respecting the right to compensation in favor of an injured employee." *Salt Lake City Corp. v. Labor Comm'n*, 2007 UT 4, ¶ 16, 153 P.3d 179. Further, workers' compensation is intended to protect injured workers by replacing, to some extent, wages

that have been lost as a result of work-related accidents. *See Reteuna v. Industrial Comm'n*, 55 Utah 258, 185 P. 535, 537 (1919). We conclude that because the factors listed in rule 612–1–10.D.1 are consistent with the Commission's overall goal and obligation to aid injured workers, the Commission did not abuse its discretion in considering those factors.

¶ 21 Moreover, we note that the Commission's consideration of the injured employee's wage to determine whether other work is reasonably available complies with other provisions within the Act. As previously addressed, the purpose of the Act is to "secure compensation to an injured employe[e]" and "to relieve society of the care and support of the unfortunate victims of industrial accidents." *Id.* In compliance with this overall purpose, several provisions within the Act require the Commission to consider an injured employee's wage to determine workers' compensation benefits. For example, when an injured employee is temporarily and partially disabled, an employer is required to pay "66 2/3% of the difference between the employee's average weekly wages before the accident and the weekly wages the employee is able to earn after the accident." Utah Code Ann. § 34A–2–411(1)(a) (2005). Moreover, when an injured employee is temporarily and totally disabled, the state average weekly wage is used to compute the maximum amount an injured employee can receive. *See id.* § 34A–2–410(3).

■ ¶ 22 Finally, we note that the Commission has the authority to evaluate the

additional factors in rule 612–1–10.D.1 concerning the prospective job market because those factors more clearly define the "past work experience" factor found in Utah Code section 34A–2–413. *See id.* § 34A–2–413(1)(c)(iv)(C) (Supp.2007). We conclude that past work experience necessarily raises the issues associated with a competitive labor market, including wages. In considering McGee's past work experience pursuant to Utah Code section 34A–2–413, the Commission had to recognize that McGee's past work experience allowed him to demand a higher wage at another job. Therefore, the Commission could properly evaluate McGee's prospective wage when it considered his past work experience.[2]

## CONCLUSION

¶ 23 We review the Commission's interpretation of the statutory language "other work reasonably available," *see* Utah Code Ann. § 34A–2–413, for an abuse of discretion, and we conclude that the Commission did not abuse its discretion when it considered the factors included in rule 612–1–10.D.1 to determine whether other work was reasonably available to McGee. Accordingly, we affirm.

¶ 24 WE CONCUR: RUSSELL W. BENCH, Presiding Judge, and PAMELA T. GREENWOOD, Associate Presiding Judge.

---

**2.** LPI relies on some Utah case law to support its position that rule 612–1–10.D.1 is improper because it conflicts with the statutory standard set by the legislature. However, we find these cases distinguishable. In *Sanders Brine Shrimp v. Audit Division of the Utah State Tax Commission*, 846 P.2d 1304 (Utah 1993), the Tax Commission adopted a rule defining "manufacturer"-a term used in the statutory standard for the Tax Commission. The Utah Supreme Court reviewed the Tax Commission's rule under a correction of error standard and afforded no deference to the Tax Commission's ruling because none of the circumstances requiring the agency's expertise existed. *See id.* at 1305. Instead, the court determined that "under the [Tax] Commission's rule, one might operate a manufacturing facility as defined by the statute and not be a manufacturer as defined by the rule." *Id.* at 1306. In

that case, the rule defining the term "manufacturer" clearly contradicted the statute. Thus, the facts in *Sanders Brine Shrimp* can be distinguished. In the case before us, the administrative rule does not directly contradict the statutory standards, and the term "manufacturer" is not a broad or generalized term requiring the grant of deference to the agency in interpreting it, as is the term "other work reasonably available."

LPI also cited *Draughon v. Department of Financial Institutions*, 1999 UT App 42, 975 P.2d 935, to support its position. In *Draughon*, this court invalidated an agency rule defining the term "demotion" because the rule was clearly inconsistent with what is commonly understood as a demotion. *See id.* ¶ 9. However, it is not as certain that "other work reasonably available" used here is as clear or commonly understood as is the term "demotion" used in *Draughon*.