2009 UT 41

**LPI SERVICES and/or Travelers Indemnity Co. of Connecticut, Petitioners,**

v.

**Michael McGEE and the Utah Labor Commission, Respondents.**

No. 20080063.

Supreme Court of Utah.

July 21, 2009.

lenge, as here.

Mark R. Sumsion, Michael K. Woolley, Salt Lake City, for petitioners.

Richard Burke, Sandy, for respondent Michael McGee.

Alan Hennebold, Salt Lake City, for respondent Utah Labor Commission.

PARRISH, Justice:

## INTRODUCTION

¶ 1 LPI Services and Travelers Indemnity Co. (collectively "LPI") seek reversal of the court of appeals' decision affirming the Labor Commission's (the "Commission") preliminary finding that Michael McGee is permanently and totally disabled. LPI argues that the court of appeals applied the wrong standard of review by granting deference to the Commission's statutory interpretation of Utah Code section 34A–2–413(1)(c)(iv). It further argues that the Commission exceeded its rulemaking authority when promulgating rule 612–1–10.D.1 (the "Rule") because it conflicts with the statutory language. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶ 2 On July 4, 2001, while working for LPI as a building engineer, McGee injured his lower back when he and three other employees attempted to move a 600–pound motor. McGee applied for Permanent Total Disability ("PTD") benefits. At the hearing to determine McGee's entitlement to PTD, both sides presented reemployment experts who proffered opinions regarding McGee's employability based on his medical reports. McGee's expert concluded that McGee "was an unfit candidate for either re-employment or vocational rehabilitation." Conversely, LPI's expert concluded that McGee "belonged in the light physical demand characteristics of work level" and identified two jobs he considered suitable for McGee. Both of these jobs paid less than the average weekly wage for the State of Utah at the time of the industrial accident. The administrative law judge (the "ALJ") entered a preliminary finding of PTD based in part on his determination under the Rule that there was no other work reasonably available for McGee to perform because the only available employment paid less than the state's average weekly wage.

¶ 3 LPI filed a Motion to Review the ALJ's ruling with the Labor Commission Appeals Board ("Appeals Board"), arguing that the controlling statute, Utah Code section 34A–2–413(1)(c)(iv), lists the only factors—age, education, past work experience, medical capacity, and residual functional capacity—that the Commission can consider when determining whether other work is reasonably available. Pursuant to the Rule, however, the Commission will only find that other work is reasonably available if "[t]he work provides a gross income at least equivalent to ... [t]he current state average weekly wage, if at the time of the accident the claimant was earning more than the state average weekly wage then in effect." Utah Admin.Code r. 612–1–10.D.1 (2009). LPI argues that the Rule adds a wage requirement not present in the statute. The Appeals Board affirmed the ALJ's decision, holding that the statutory

term "past work experience" permits consideration not only of the injured worker's past job duties, but also of other aspects of the employment contract such as previous wages.

¶ 4 LPI re-urged its argument before the court of appeals without success. Finding an implicit grant of discretion to the agency in the broad and generalized term "other work reasonably available," the court of appeals analyzed the Commission's Rule for abuse of discretion. Under this standard of review, the court of appeals held that the Commission properly supplemented the "personal, physical characteristics of the injured employee" factors listed in section 34A–2–413(1)(c)(iv) with a second category of factors addressing "the prospective job market" (wage, location, and the regular availability of work). *LPI Servs. v. Labor Comm'n*, 2007 UT App 375, ¶¶ 17, 20, 173 P.3d 858. Additionally, the court of appeals held that the statutorily listed factor "past work experience" subsumes consideration of wages. *Id.* ¶ 22. We have jurisdiction in this case pursuant to Utah Code section 78A–3–102(3)(a) (2008).

## ISSUES & STANDARD OF REVIEW

¶ 5 We granted LPI's petition for certiorari to review two issues: first, whether the court of appeals applied the correct standard of review and second, whether the court of appeals erred in determining that the Labor Commission acted within its authority in promulgating the Rule.

¶ 6 On certiorari, this court reviews the decision of the court of appeals for correctness, giving no deference to its conclusions of law. *Thomas v. Color Country Mgmt.*, 2004 UT 12, ¶ 9, 84 P.3d 1201.

## ANALYSIS

I.  THE COURT OF APPEALS APPLIED THE CORRECT STANDARD OF REVIEW TO THE COMMISSION'S RULE BECAUSE SECTION 34A–2–413(1)(c)(iv) IMPLICITLY GRANTS THE COMMISSION DISCRETION TO INTERPRET THE TERM "OTHER WORK REASONABLY AVAILABLE"

¶ 7 Absent a legislative grant of discretion, this court reviews an agency's interpretation of its organic statute for correctness, granting no deference to the agency's interpretation. *Martinez v. Media–Paymaster Plus*, 2007 UT 42, ¶¶ 41–42, 164 P.3d 384. But where the legislature has granted discretion to an agency to interpret the statutory provision at issue, we will affirm the agency's interpretation if it is reasonable. *Morton Int'l, Inc. v. Auditing Div. of the Utah State Tax Comm'n*, 814 P.2d 581, 587 (Utah 1991) (superseded by Utah Code Ann. § 59–1–610(1)(b) with regard to administrative decisions made by the Utah State Tax Commission as stated in *49th St. Galleria v. Tax Comm'n, Auditing Div.*, 860 P.2d 996 (Utah Ct.App.1993)).

¶ 8 The legislature may grant an agency discretion, either explicitly or implicitly, to interpret specific statutory terms. *Id.* at 588. For example, the legislature expressly granted the Commission discretion in section 34A–2–413 when it mandated that "[t]he commission shall establish rules regarding part-time work and offset." Utah Code Ann. § 34A–2–413(7)(f)(I) (2005). The legislature may also implicitly grant discretion to an agency. *Morton*, 814 P.2d at 588. "[W]hen the operative terms of a statute are broad and generalized, these terms bespeak a legislative intent to delegate their interpretation to the responsible agency." *Id.* (internal quotation marks omitted). For example, this court has held that by using the term "equity and good conscience" the legislature clearly intended to confer broad discretion to the Department of Employment Security to make determinations under this standard. *Salt Lake City Corp. v. Dept. of Employment Sec.*, 657 P.2d 1312, 1316–17 (Utah 1982).

¶ 9 This court has "also granted an agency's statutory interpretation deference when the statutory language suggested that the legislature ... left the specific question at issue unresolved." *Morton*, 814 P.2d at 588. Accordingly, "when there is more than one permissible reading of the statute and no basis in the statutory language or legislative history to prefer one interpretation over another ... [t]he agency that has been granted

authority to administer the statute is the appropriate body to" interpret it. *Id.* at 588–89. But if we can discern the legislature's intent by using the traditional tools of statutory interpretation, we grant no deference to the agency and interpret the statute "in accord with its legislative intent." *Id.* at 589; *cf. Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) ("First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.").

¶ 10 All parties agree with the general standards outlined above and likewise agree that the Commission lacks an explicit grant of discretion to interpret section 34A–2–413(1)(c)(iv). But the parties disagree on whether the term "other work reasonably available" implicitly grants the Commission discretion. We find that the plain language of the statute is ambiguous but that the legislative history indicates that the legislature clearly intended to grant the Commission discretion to consider factors beyond the five enumerated in the statute when determining whether other work is reasonably available.

*A. Section 34A–2–413(1)(c)(iv) Does Not Prevent the Labor Commission From Considering More Than the Five Enumerated Factors When Determining Whether Other Work Is Reasonably Available*

¶ 11 "Above all, this court's primary objective in construing enactments is to give effect to the legislature's intent." *Savage v. Utah Youth Vill.,* 2004 UT 102, ¶ 18, 104 P.3d 1242 (internal quotation marks omitted). To discern legislative intent, "we look first to the statute's plain language." *Martinez,* 2007 UT 42, ¶ 46, 164 P.3d 384. "We read the plain language of the statute as a whole[ ] and interpret its provisions in harmony with other statutes in the same chapter and related chapters." *Miller v. Weaver,* 2003 UT 12, ¶ 17, 66 P.3d 592. When the plain meaning of the statute can be discerned from its language, no other interpretive tools are needed. *Martinez,* 2007 UT 42, ¶ 47, 164 P.3d 384. However, "a court should not follow the literal language of a statute if its plain meaning works an absurd result." *Savage,* 2004 UT 102, ¶ 18, 104 P.3d 1242. "[I]f the language is ambiguous, the court may look beyond the statute to legislative history ... to ascertain the statute's intent." *Martinez,* 2007 UT 42, ¶ 47, 164 P.3d 384.

¶ 12 We now turn to the statutory language at issue here. First, we consider the conflicting interpretations of the statutory language argued by both sides. Then, finding the statutory language unclear, we examine the legislature's intent when it passed the 1995 amendment to the Workers' Compensation Act, which added the language at issue. Finally, we clarify that *Martinez* does not limit the Commission's consideration of "other work reasonably available" to the five enumerated statutory factors.

1. The Plain Language of Section 34A–2–413 Is Ambiguous

¶ 13 Both LPI and the respondents[1] present permissible grammatical readings of section 34A–2–413(1)(c)(iv). The relevant portion of the statute reads, "To find an employee permanently totally disabled, the commission shall conclude that ... the employee cannot perform other work reasonably available, taking into consideration the employee's: (a) age; (b) education; (c) past work experience; (d) medical capacity; and (e) residual functional capacity." Utah Code Ann. § 34A–2–413(1)(c)(iv) (2005)[2].

¶ 14 LPI relies on the rule of the last antecedent to argue that the language of section 34A–2–413(1)(c)(iv) permits the Commission to consider only the five enumerated factors when determining whether other

---

1. Both the Labor Commission and Mr. McGee filed respondents' briefs in this matter, and we collectively refer to them as Respondents. In those cases where their arguments differ, we will refer to them individually.

2. We refer to the 2005 version of the statute, which is at issue in this case. The 2006 amendment to the statute makes slight alterations to the wording of this subsection.

work is reasonably available and that the statute prohibits the Commission from considering location, stability, and wage. In contrast, the Commission asserts that the five enumerated factors do not determine whether other work is reasonably available but instead relate to the individual worker's ability to perform reasonably available work. The Commission argues that the interpretation urged by LPI would lead to an absurd result because the Commission would not be able to award benefits even in those cases where the only work available was outside of the state.

■■■ ¶ 15 The rule of the last antecedent does not mandate that we limit the Commission's interpretation of "other work reasonably available" to the enumerated five factors. Under the rule of the last antecedent, " '[q]ualifying words and phrases are generally regarded as applying to the immediately preceding words, rather than to more remote ones.' " *Day v. Meek,* 1999 UT 28, ¶ 10, 976 P.2d 1202 (quoting *Salt Lake City v. Salt Lake County,* 568 P.2d 738, 740 (Utah 1977)). But the rule of the last antecedent does not mandate that qualifying rules and phrases *only* apply to the immediately preceding words; rather when given a choice between the immediately preceding words and more remote words, we prefer the words closer in proximity to the qualifying words and phrases. This rule does not prevent us from deciding that qualifying words and phrases apply to " 'several preceding terms of the same character.' " *Id.* ¶ 11 (quoting *Salt Lake City,* 568 P.2d at 741). Moreover, rules of statutory construction, such as the rule of the last antecedent, " 'are useful guides, but poor masters[,] and they should not be regarded as having any such rigidity as to have the force of law, or distort an otherwise natural meaning or intent.' " *Id.* ¶ 10 n. 4 (quoting *Salt Lake City,* 568 P.2d at 741).

¶ 16 LPI argues that the rule of the last antecedent mandates that the five factors modify "other work reasonably available," thus limiting the Commission's authority to consider any other factors in determining whether other work is reasonably available. However, the rule of the last antecedent actually suggests that the five factors modify the entire preceding phrase, "the employee cannot perform work otherwise reasonably available," rather than just the latter portion of the phrase. Under this interpretation, it is just as likely that the legislature specified the five factors to be considered in assessing the employee's ability to perform reasonably available work but first intended the Commission to consider whether work was "reasonably available." We therefore conclude that the rule of the last antecedent does not shed any light on the legislature's intent because the phrase preceding the qualifying words can be interpreted to have two meanings. Further, neither proposed interpretation leads us to an absurd result that the legislature could not have intended. Because the plain language of the statute is ambiguous, we turn to the legislative history to discern the legislative intent.

2. The Legislature Intended to Give the Commission Discretion to Interpret "Other Work Reasonably Available" Under Section 34A–2–413(1)(c)(iv)

¶ 17 Because section 34A–2–413(1)(c)(iv) is ambiguous, we look to legislative history to discern the legislature's intent. The relevant legislative history reveals that the legislature did not intend to confine the meaning of "other work reasonably available" to the five factors enumerated in the statute. Both the Utah Senate and House floor debates reflect the intent to allow the Commission to consider the geographic location of available work, which is not one of the five enumerated factors, in determining whether other work is reasonably available.

¶ 18 LPI argues that, when amending the Workers' Compensation Act in 1995, the Utah Senate twice rejected an amendment that would have allowed the Commission to take into account the locality of the work in determining whether other work was reasonably available. Upon evaluation of the legislative history, we find this argument unpersuasive.[3] The first rejection of a locality of

3. In addition to finding this argument unpersua-

sive, we also note that LPI's use of legislative

work requirement occurred in a debate regarding the portions of the bill that allowed employers to locate part-time work for their PTD employees and that required the employee to fully cooperate with the employer's efforts.[4] Audio Recording: Senate Debate on S.B. 123, 51st Leg. Gen. Sess. (Feb. 21, 1995). Although this amendment failed, it did not fail because the Senate did not want the Commission to take into consideration the geographic location of the available part-time work; rather, it failed because the senators apparently thought it was unnecessary. *Id.*

¶ 19 LPI's brief also points to a second failed amendment. In debating section 34A–2–413, the senate chose not to insert "in the local economy" after "other work reasonably available." *Id.* LPI argues that the Senate's refusal to include this language made clear that the Commission may not consider geographic location when determining whether other work is reasonably available. But the floor debates make clear that the debating senators agreed that geographic location considerations are best left to the reasonable discretion of the Commission and disagreed only about what statutory language would best fulfill this purpose. Audio Recording: Senate Debate on S.B. 123, 51st Leg. Gen. Sess. (Feb. 22, 1995). Indeed, the House floor debates confirm that the legislature did not intend to require the Commission to find that work was reasonably available if it was outside the geographic area of the injured worker. Audio Recording: House Debate on S.B. 123, 51st Leg. Gen. Sess. (Feb. 28, 1995).

¶ 20 In summary, the legislative history reveals that neither the House nor the Senate intended to confine the meaning of "other work reasonably available" to the five factors enumerated in the statute. Thus, LPI's argument that "other work reasonably available" should be considered only in light of those five factors is untenable.

3. *Martinez* Does Not Confine "Other Work Reasonably Available" to the Five Factors Enumerated in Section 34A–2–413(1)(c)(iv)

¶ 21 LPI next argues that this court has already confined the meaning of "other work reasonably available" to the five statutory factors. In *Martinez*, this court held that whether other work was reasonably available presented a purely factual question to be reviewed under the substantial evidence standard. 2007 UT 42, ¶¶ 32–34, 164 P.3d 384. Specifically, we stated that the five enumerated factors are "factual considerations [that] inform what is reasonable." *Id.* ¶ 32. LPI argues that this language allows the Commission to consider only the five factors when determining whether other work is reasonably available. We find this argument unpersuasive. The language in *Martinez* relates only to the factual nature of determining whether other work is reasonably available. It does not serve to limit the Commission's discretion to decide the test for whether other work is "reasonably available."

¶ 22 In fact, *Martinez* supports the Commission's interpretation. In *Martinez*, we stated that the "elements of proof turn on intimate facts about the employee's circumstances—his unemployment or how his medical capacity or age *affects his ability to do reasonably available work.*" *Id.* ¶ 52 (emphasis added). This passage suggests that two of the enumerated statutory factors— age and medical capacity—relate to an employee's ability to perform reasonably available work, an inquiry separate from determining whether other work is reasonably available.

B. *The Court of Appeals Correctly Reviewed the Commission's Decision Under an Abuse of Discretion Standard*

¶ 23 Because the legislature did not intend to confine the meaning of the phrase "other

history was misleading. LPI points to a floor debate concerning an entirely different portion of the statute and misconstrues the substance of the debate concerning the applicable portion of the statute.

4. *See* Utah Code Ann. § 34A–2–413(7)(b) ("An employer or its insurance carrier may provide or locate for a permanently totally disabled employ-

ee reasonable, medically appropriate, part-time work in a job earning at least minimum wage . . . ."); *see also id.* § 34A–2–413(7)(c) ("An employee shall . . . fully cooperate in the placement and employment process . . . and . . . accept the reasonable, medically appropriate, part-time work.").

work reasonably available" to the five statutory factors, we now consider whether the legislature implicitly granted discretion to the Commission to interpret it. We conclude that it did.

¶ 24 As the court of appeals noted, " 'reasonableness' is a broad, general, and subjective concept; its meaning depends on the context in which it is applied." *LPI Servs. v. Labor Comm'n*, 2007 UT App 375, ¶ 15, 173 P.3d 858. Similarly, "[o]ther work reasonably available" is a broad and generalized phrase that, under *Morton*, bespeaks a legislative intent to delegate its interpretation to the responsible agency. Because the precise meaning of this phrase cannot be ascertained through traditional means of statutory interpretation, choosing one permissible meaning over another reflects a value judgment that the legislature has entrusted to the discretion of the agency empowered to administer the statute. Moreover, the legislative history indicates that the legislature intended the Commission to take into account more than just the five enumerated factors when determining whether other work was reasonably available. Thus, the court of appeals correctly reviewed rule 612–1–10.D.1 under an abuse of discretion standard.

## II. THE COMMISSION DID NOT ABUSE ITS DISCRETION IN PROMULGATING UTAH ADMINISTRATIVE CODE RULE 612–1–10.D.1

■ ¶ 25 LPI argues that even if the Commission was allowed to consider more than the five factors enumerated in section 34A–2–413(1)(c)(iv), it abused its discretion when it promulgated a rule that takes into account wage when determining whether other work is reasonably available. "An administrative agency's authority to promulgate regulations is limited to those regulations which are consonant with the statutory framework, and neither contrary to the statute nor beyond its scope." *Draughon v. Dep't of Fin. Insts.*, 1999 UT App 42, ¶ 5, 975 P.2d 935. When an agency has discretion to interpret a statutory term, the agency's interpretation must be reasonable. *Morton Int'l, Inc. v. Auditing Div. of the Utah State Tax Comm'n*, 814 P.2d 581, 587 (Utah 1991).

Thus, the Commission could only promulgate rule 612–1–10.D.1, which required the Commission to consider a worker's salary history, if the Rule constitutes a reasonable interpretation of the governing statute, Utah Code section 34A–2–413.

■ ¶ 26 The Commission's interpretation of Utah Code section 34A–2–413(1)(c)(iv) was permissible in light of the scope and statutory framework of the Workers' Compensation Act. As noted by the court of appeals, "workers' compensation is intended to protect injured workers by replacing, to some extent, wages that have been lost as a result of work-related accidents." *LPI Servs. v. Labor Comm'n*, 2007 UT App 375, ¶ 20, 173 P.3d 858. The fundamental purpose of the workers' compensation system is to "alleviate hardships upon workers and their families." *Baker v. Indus. Comm'n*, 17 Utah 2d 141, 405 P.2d 613, 614 (1965). With these purposes in mind, the Commission had full authority to promulgate a rule that takes into account a worker's prior wage when determining whether other work is reasonably available to that worker. The Commission was therefore acting within its discretion when it promulgated rule 610–1–10.D.1.

## CONCLUSION

¶ 27 We hold that the legislature granted the Commission discretion to determine what constitutes reasonably available work when evaluating whether a worker is permanently and totally disabled. Further, the Commission did not abuse its discretion when it promulgated a rule that takes into account the injured worker's past wages in determining whether work is reasonably available. We therefore affirm the decision of the court of appeals.

¶ 28 Chief Justice DURHAM, Associate Chief Justice DURRANT, Justice WILKINS, and Justice NEHRING concur in Justice PARRISH'S opinion.