2013 UT App 123

# THE UTAH COURT OF APPEALS

RANDY JAMES CLAWSON,
Petitioner,
*v.*
LABOR COMMISSION, DIVISION OF ADJUDICATION; STAR FOUNDRY
AND MACHINE; AND WORKERS COMPENSATION FUND,
Respondents.

Memorandum Decision
No. 20110333-CA
Filed May 16, 2013

Original Proceeding in this Court

David J. Holdsworth, Attorney for Petitioner
Hans M. Scheffler, Attorney for Respondents
Workers Compensation Fund and Star Foundry
and Machine
Alan L. Hennebold, Attorney for Respondent
Labor Commission, Division of Adjudication

JUDGE STEPHEN L. ROTH authored this Memorandum
Decision, in which JUDGES J. FREDERIC VOROS JR. and
MICHELE M. CHRISTIANSEN concurred.

ROTH, Judge:

¶1     Petitioner Randy James Clawson petitions for review of a
Utah Labor Commission Appeals Board (the Board) decision to
deny his claim for permanent total disability compensation. *See
generally* Utah Code Ann. § 34A-2-413(1) (LexisNexis 2011). We set
aside the Board's decision and direct the Board to reconsider
Clawson's claim.

¶2     In 1975, Clawson dropped out of tenth grade and started working at Star Foundry. He is now in his fifties and has been employed there for over thirty years. Over the course of his employment, Clawson was exposed to silica dust, which can cause scarring and inflammation in the lungs when inhaled. During the last few years of his employment at Star Foundry, Clawson was diagnosed with silicosis as a result of his exposure to and inhalation of silica dust.[1]

¶3     Clawson started smoking around the same time he started working at Star Foundry. For about fifteen years he smoked three packs a day but has since reduced his smoking to about ten cigarettes a day. Clawson has also been diagnosed with chronic bronchitis and chronic obstructive pulmonary disease (COPD), which are apparently related to his smoking.

¶4     In 2006, Clawson began experiencing symptoms such as shortness of breath, syncope, and loss of balance. Because these symptoms interfered with his ability to work, Clawson took a medical leave of absence. He then applied for permanent total disability benefits with the Labor Commission (the Commission). With his application, he submitted the opinions of several doctors who had examined and diagnosed him. Two of the doctors agreed that Clawson should avoid any further exposure to silica dust, explaining that "[t]he nature of this disease is progressive, even without additional exposure," and the disease's natural progression can be "exacerbated by additional exposure to silica"

---

1. Over the course of his thirty-year employment at Star Foundry, Clawson worked various jobs in production and maintenance. During most of his employment he worked in the foundry area, where he was exposed to silica dust. However, during the last two years that he was employed at Star Foundry, Clawson worked in the office building, which was located in an area separate from the foundry. Although his job duties at that time were mostly conducted outside of the foundry, he was nonetheless required to go into the foundry three to four times per day for about thirty minutes at a time.

dust. Although a third doctor initially agreed that Clawson should avoid any further exposure to silica dust, he later opined that Clawson could work in an environment with very low levels of the dust because it "would not increase his risk for future respiratory damage." Also, three doctors[2] disagreed about the cause of the symptoms that had initially interfered with Clawson's ability to work, i.e., the shortness of breath, syncope, and loss of balance. One doctor opined that Clawson's silicosis was the cause of those symptoms while the other two opined that those symptoms were caused by other medical disorders, with one doctor in particular attributing the symptoms to Clawson's smoking.

¶5     Clawson's claim was submitted to an Administrative Law Judge (the ALJ) for decision. Due to the differing opinions of Clawson's doctors, the ALJ found that there was a "medical controversy" on the issues of (1) whether Clawson should avoid further exposure to silica dust and (2) the medical cause of his symptoms. Those issues were referred to a medical panel for review. In its report, the medical panel first addressed the medical cause of Clawson's symptoms. The panel agreed that Clawson had been correctly diagnosed with silicosis but concluded that Clawson's silicosis was not the cause of his shortness of breath, syncope, and loss of balance. Rather, the panel concluded that Clawson's chronic bronchitis/COPD was the more likely cause of those symptoms. The panel then explained that "[s]imple silicosis . . . progresses only very slowly, if at all" and "is not associated with clinically significant pulmonary problems when uncomplicated by infection or autoimmune disease," so "[w]ithout the onset of progressive massive fibrosis, no significant adverse pulmonary consequence is expected in silicosis." However, the panel also stated that Clawson should not "work in an

---

2. There are a total of four doctors whose opinions are relevant here. Two of those doctors opined about whether Clawson should avoid further exposure to silica dust and about the medical cause of his symptoms. A third doctor only opined about whether he should avoid further exposure to silica dust, while the fourth doctor only opined about the medical cause of his symptoms.

environment that exposes him to any silica dust." The panel explained that "an individual with an exposure history to . . . silica leading to any degree of pneumoconiosis should avoid further exposure" because "the only effective treatment (and preventive measure) for this disorder is removal from exposure."

¶6 The ALJ concluded that Clawson was entitled to receive disability benefits. The Commission appealed the ALJ's decision to the Board, which reversed the ALJ and denied Clawson's claim, with one member dissenting. Clawson now seeks judicial review, challenging the Board's determination that he is not entitled to permanent total disability benefits.

¶7 Under the Workers' Compensation Act, "[t]o establish entitlement to permanent total disability compensation, the employee shall prove by a preponderance of the evidence that (i) the employee sustained a significant impairment . . . as a result of the . . . occupational disease that gives rise to the permanent total disability entitlement; (ii) the employee has a permanent, total disability; and (iii) the . . . occupational disease is the direct cause of the employee's permanent total disability." Utah Code Ann. § 34A-2-413(1)(b) (LexisNexis 2011). "To establish that an employee has a permanent, total disability," the act requires that the employee "prove by a preponderance of the evidence that" the employee is unable to work. *Id.* § 34A-2-413(1)(c)(i)–(iv).

¶8 In applying these statutory factors to Clawson's claim for disability benefits, the ALJ recognized that Clawson's silicosis was the basis for his claim. Based on the medical panel's report, the ALJ concluded that Clawson's silicosis was not the cause of the symptoms that had originally interfered with his ability to work; rather, the ALJ concluded that Clawson's "symptoms of shortness of breath, syncope and loss of balance are medically caused by chronic bronchitis/COPD." The ALJ nonetheless concluded that Clawson's silicosis entitled him to receive disability benefits. The ALJ reasoned that Clawson's silicosis was a significant impairment because it "prevents him from [having] any exposure to silica dust." And because he should avoid any exposure to silica dust,

the silicosis rendered Clawson unable to work, thus making the disease the direct cause of a permanent total disability. The ALJ explained that although the symptoms that were related to his chronic bronchitis/COPD initially contributed to his inability to work, "it is the limitation that [he] have no exposure to silica dust that prevents [Clawson] from working" and renders him permanently and totally disabled.

¶9     The Board reversed the ALJ's decision and denied Clawson's claim for disability benefits. The Board agreed with the ALJ that, based on the medical panel's report, "Clawson's symptoms were caused by chronic bronchitis/COPD." But the Board concluded that Clawson was not entitled to disability benefits apparently because those symptoms were not attributable to Clawson's silicosis, and the silicosis itself had produced no disabling physical manifestation. Specifically, the Board denied Clawson's claim on two grounds. First, the Board concluded that Clawson's silicosis was not a significant impairment:

> Clawson's simple silicosis is not associated with clinically significant pulmonary problems, and no significant pulmonary consequence was expected with respect to his work-related silicosis. Thus, while there is no dispute that . . . Clawson developed silicosis from his work at Star [Foundry], the evidence shows that his silicosis is not a significant impairment.

*See generally id.* § 34A-2-413(1)(b)(i) (requiring a significant impairment to be eligible for benefits). Second, the Board concluded that the silicosis was not the direct cause of a permanent total disability:

> The medical panel's report indicates that . . . Clawson's condition was not the cause of his lightheadedness, syncope, shortness of breath or other symptoms. In fact, the medical panel's report indicates that . . . Clawson's symptoms were caused

> by chronic bronchitis/COPD which were attributable to his history of heavy smoking.

*See generally id.* § 34A-2-413(1)(b)(iii) (requiring that the occupational disease be a direct cause of permanent total disability to be eligible for benefits). Because the Board's conclusions effectively disposed of Clawson's claim, the Board did not reach the issue of whether Clawson was permanently and totally disabled due to an inability to work. *See generally id.* § 34A-2-413(1)(b)(ii), (c) (providing that an employee must prove a permanent and total disability to be eligible for benefits, and setting forth factors to determine such a disability).

¶10 We set aside the Board's decision and instruct the Board to revisit the issue because we conclude that the Board failed to fully consider Clawson's silicosis as a basis for his claimed disability. As we have explained, Clawson has been diagnosed with two separate medical disorders that are relevant to his claim for disability benefits: silicosis and chronic bronchitis/COPD.[3] Clawson's silicosis is indisputably the result of his exposure to silica dust while employed at Star Foundry. At this stage in the proceedings, it is mostly undisputed that Clawson's smoking-related chronic bronchitis/COPD is the medical cause of the symptoms that initially prevented him from working, i.e., shortness of breath, syncope, and loss of balance.[4] The Board's decision denying

---

3. Clawson also suffers from an industrial lower back injury and anxiety-related hyperventilation, but those conditions are not relevant to our analysis of the Board's decision, though the Board may consider them upon further review as appropriate.

4. Both the ALJ and the Board concluded, based on the medical panel's report, that Clawson's chronic bronchitis/COPD is the medical cause of these symptoms. Clawson does not challenge this conclusion on appeal and even explains that the cause of these symptoms is "not . . . the central issue" and is "largely irrelevant." Instead, Clawson argues that the ultimate issue is whether he is

(continued...)

Clawson's claim for permanent total disability benefits seems to be the result of its focus on these symptoms. Indeed, it appears that the Board assumed that those symptoms were the only basis for Clawson to claim disability, and having determined that the silicosis was not the medical cause of those symptoms, the Board simply denied his claim.

¶11     As a consequence, the Board failed to consider whether Clawson's silicosis could provide a basis for an award of benefits independent of these symptoms. Indeed, the dissenting board member identified the flaw in the Board's reasoning, explaining that the Board had improperly focused on Clawson's chronic bronchitis/COPD and the related symptoms while ignoring the independent significance of his silicosis:

> The [majority's] argument essentially is the following: . . . Clawson suffers from chronic bronchitis/COPD. This disease resulted in the symptoms of syncope, light headedness and shortness of breath. As a result of these symptoms, . . . Clawson was forced to resign from his

---

4. (...continued)

entitled to permanent total disability benefits due to his silicosis requiring that he not be exposed to any silica dust, which ultimately prevents him from working at his only viable occupation. Clawson also argues on appeal that, in addition to his smoking, his silicosis could have contributed to his chronic bronchitis/COPD. However, because the ALJ's and the Board's conclusions that these conditions are related to his smoking and not his silicosis are based on the medical panel's report as well as the opinions of other doctors, these conclusions are supported by substantial evidence, and we decline to disturb them. *See generally* Utah Code Ann. § 63G-4-403(4)(g) (LexisNexis 2012) (explaining that an agency's factual findings are reviewed for substantial evidence); *Martinez v. Media–Paymaster Plus/Church of Jesus Christ of Latter-day Saints*, 2007 UT 42, ¶¶ 23, 35–36, 164 P.3d 384 (explaining the substantial evidence standard of review).

employment. The disease was caused by . . . Clawson's history of smoking. Therefore, . . . Clawson did not prove that he is entitled to permanent total disability compensation.

The problem with the [majority's] use of facts is that it totally ignores a different, more relevant, set of facts which goes as follows: . . . Clawson suffers from the disease of "simple silicosis." This disease was caused by his employment . . . . After . . . Clawson left his employment because of his chronic bronchitis/COPD, it was discovered that . . . Clawson should not work at [Star Foundry] because of his "simple silicosis" disease.

We believe that the dissent accurately identifies a material omission in the Board's decision: the Board did not consider whether Clawson's silicosis itself provides an independent basis for him to receive permanent total disability benefits.

¶12 We emphasize, however, that our decision is not intended to provide a definitive interpretation of the relevant statutory authority or a binding analysis of the pertinent facts or the application of the law to those facts. Rather, those tasks are reserved for the Board when it revisits the issue because it is the entity that ought to make determinations of that kind in the first instance, and given the limits of the Board's decision, it has not yet done so.[5] We therefore instruct the Board to reconsider the issue,

---

5. Our case law has recognized certain parts of Utah Code section 34A-2-413(1)(b) and (1)(c) as calling for factual determinations to be made by the reviewing agency—here, the Board. *See, e.g., Martinez*, 2007 UT 42, ¶¶ 23, 30–33. And we review such factual determinations to determine whether they are based on substantial evidence, a standard that requires us to afford considerable deference to the reviewing agency. *See id.* ¶¶ 23, 35–36 (noting that an administrative law decision meets the substantial evidence test

(continued...)

and we provide the following analysis to more fully explain why we believe the Board ought to consider an issue it seems to have bypassed in reaching its decision in this matter. *Cf. State v. Sellers*, 2011 UT App 38, ¶ 23, 248 P.3d 70 ("[W]e have discretion to address the issues that are likely to recur during the new trial to guide the trial court on remand.").

 I. Clawson's Occupational Disease May Constitute a Significant

---

5. (...continued)
when "a reasonable mind might accept as adequate the evidence supporting the decision"). Similarly, although interpretation of a statute typically presents a question of law that is reviewed for correctness, *see* Utah Code Ann. § 63G-4-403(4)(d), portions of this statute have been recognized as granting the reviewing agency discretion to interpret its terms, meaning that the agency's interpretation need only be reasonable. *See, e.g., LPI Servs. v. McGee*, 2009 UT 41, ¶ 7, 215 P.3d 135 (explaining that when the operative statutory language grants discretion to the agency to interpret the statutory provision at issue, the agency's interpretation need only be reasonable); *id.* ¶¶ 23–24 (concluding that the statutory language in section 34A-2-413(1)(c) that inquires whether a claimant is able to perform "other work reasonably available" "implicitly grant[s] discretion to the Commission to interpret it" because "reasonableness is a broad, general, and subjective concept" and "its meaning depends on the context in which it is applied" (citation and internal quotation marks omitted)). In addition, a reviewing agency's application of a set of facts to the law is afforded a degree of deference and is reviewed for reasonableness and rationality. *See Peterson Hunting v. Labor Comm'n*, 2012 UT App 14, ¶ 12, 269 P.3d 998. Thus, our ability to review the Board's decision here—whether it amounts to an interpretation of the statute or the application of the statutory law to the facts of the case—is contingent on the Board actually making a decision by taking into account all the facts of the case to which the statutory scheme might reasonably have application. Where, as here, the Board has not reached what appears to us to be a relevant issue, we should not resolve the issue in the first instance but must remand for further consideration by the Board.

Impairment.

¶13   "To establish entitlement to permanent total disability compensation, [Clawson must] prove by a preponderance of the evidence that" he "sustained a significant impairment . . . as a result of the . . . occupational disease that gives rise to the permanent total disability entitlement." *See* Utah Code Ann. § 34A-2-413(1)(b)(i) (LexisNexis 2011). An occupational disease is "any disease or illness that arises out of and in the course of employment and is medically caused or aggravated by that employment." *Id.* § 34A-3-103. And an impairment is "a purely medical condition reflecting an anatomical or functional abnormality or loss." *Id.* § 34A-2-102(1)(h).

¶14   The parties agree that Clawson's silicosis is an occupational disease. They disagree, however, about whether the disease has resulted in a "significant impairment." That Clawson's silicosis constitutes an "impairment" as that term is defined by statute seems indisputable because silicosis is a "medical condition" that "reflect[s] an anatomical or functional abnormality or loss" in the form of inflammation and scarring of his lungs. The question is whether the impairment is significant. *See, e.g., Webster's Ninth New Collegiate Dictionary* 1096 (9th ed. 1986) (defining "significant" as to "hav[e] meaning" or to "hav[e] or likely . . . have influence or effect").

¶15   Silicosis is a progressive disease. It may take years of inhaling silica dust for the disease to manifest. But once it does, it can grow in severity even without further inhalation of silica dust, though further inhalation may hasten the natural progression of the disease. Because of the progressive nature of the disease, two doctors who examined Clawson opined that he should not have any further exposure to silica dust because such exposure could exacerbate the disease. In particular, one doctor opined, "[t]he nature of this disease is progressive, even without additional exposure, and will eventually cause increased shortness of breath and problems breathing in the patient. This would be exacerbated by additional exposure to silica [dust]." Another doctor agreed that

Clawson should have "no exposure" to silica dust, explaining that there was a "strong possibility of slow worsening" of the silicosis "even if exposure [to silica dust] stops." Both doctors therefore recommended unequivocally that Clawson avoid *any* exposure to silica dust so as to prevent exacerbation of the disease.[6]

¶16    The medical panel was more skeptical about the severity of Clawson's silicosis, reasoning that "[s]imple silicosis . . . progresses only very slowly, if at all," and "is not associated with clinically significant pulmonary problems when uncomplicated by infection or autoimmune disease." Nevertheless, the medical panel agreed that Clawson should not "work in an environment that exposes him to any silica dust," explaining that "an individual with an exposure history to crystalline silica leading to any degree of pneumoconiosis should avoid further exposure" because "the only effective treatment (and preventive measure) for this disorder is removal from exposure." The medical panel's report seems to indicate that Clawson's silicosis could lead to clinically significant complications if he were exposed to silica dust. So although Clawson's doctors and the medical panel disagreed about the current severity of Clawson's silicosis and the likelihood that it would progress on its own, the two doctors and the panel agreed that any further exposure to silica dust should be entirely avoided, apparently because such exposure could cause progression or exacerbation of the disease.

¶17    In denying Clawson's claim for disability benefits, however, the Board relied on the medical panel's report to conclude that his silicosis was not a significant impairment because it was "not associated with clinically significant pulmonary problems." The Board also emphasized that the silicosis was not the cause of the symptoms that had previously prevented Clawson from working,

---

6. A third doctor initially agreed that Clawson should avoid any further exposure to silica dust but later opined that Clawson could return to a work environment where he was exposed to very low levels of silica dust because it "would not increase his risk for future respiratory damage."

i.e., the lightheadedness, syncope, and shortness of breath. Thus, the Board's conclusion that the silicosis had not resulted in a significant impairment appears to be based on the fact that the silicosis had not yet manifested in a way that was symptomatic, or at least was not associated with the overt symptoms that had previously interfered with Clawson's ability to work. But in focusing on the absence of manifest symptoms in determining whether Clawson's silicosis was a significant impairment, the Board failed to address the concern raised in the medical panel's report that Clawson's silicosis could be exacerbated by further exposure to silica dust. Because the medical panel and at least two other doctors opined that, due to the progressive nature of silicosis, Clawson should avoid any further exposure to silica dust, the Board should have considered this reasoning in determining the significance of the impairment posed by Clawson's silicosis. Therefore, we direct the Board to consider whether, under the circumstances of this case, the progressive nature of Clawson's silicosis constitutes a significant impairment. *See, e.g., Peterson Hunting v. Labor Comm'n*, 2012 UT App 14, ¶ 12, 269 P.3d 998 (explaining that the Board's application of a set of facts to the law is afforded some deference and is reviewed for reasonableness and rationality); *see also LPI Servs. v. McGee*, 2009 UT 41, ¶ 7, 215 P.3d 135 (explaining that although interpretation of a statute typically presents a question of law that is reviewed for correctness, when the operative statutory language grants discretion to the agency to interpret the statutory provision at issue, the agency's interpretation need only be reasonable).

## II. Clawson's Silicosis May Be the Direct Cause of a Permanent Total Disability that Renders Him Unable to Work.

¶18 "To establish entitlement to permanent total disability compensation, [Clawson must] prove by a preponderance of the evidence that" he "is permanently and totally disabled" and that his occupational disease—the silicosis—"is the direct cause of the . . . permanent total disability." *See* Utah Code Ann. § 34A-2-413(1)(b)(ii)–(iii) (LexisNexis 2011). In addition, to establish that he is permanently totally disabled, Clawson must "prove by a

preponderance of the evidence" that he is unable to work. *See id.* § 34A-2-413(c)(i)–(iv) (listing several factors that explore generally whether a claimant is unable to work and, thus, is permanently and totally disabled). In denying Clawson's claim for disability benefits, the Board concluded that Clawson's silicosis was not the direct cause of a permanent total disability, yet it did not decide whether Clawson was unable to work and, therefore, permanently and totally disabled. For ease of analysis, we will address both aspects of this analysis together rather than independently.

¶19    In concluding that Clawson's silicosis was not the direct cause of a permanent total disability, the Board reasoned that the silicosis "was not the cause of [the] lightheadedness, syncope, shortness of breath or other symptoms" that had previously prevented Clawson from working; rather, the Board reasoned that these "symptoms were caused by chronic bronchitis/COPD which were attributable to his history of heavy smoking." As we have discussed, the evidence fully supports the Board's determination that Clawson's silicosis was not the medical cause of these symptoms. As the ALJ, the Board, and the medical panel all concluded, the symptoms are attributable to Clawson's chronic bronchitis/COPD. *See supra* ¶ 10 & n.4. But as the dissenting board member pointed out, by focusing only on Clawson's chronic bronchitis/COPD and the related symptoms, the Board assumed that these medical conditions were the only possible cause of Clawson's permanent total disability under the circumstances. As a consequence, the Board overlooked the issue of whether Clawson's silicosis was the direct cause of a permanent total disability based on its impact on his ability to work.

¶20    As explained in the medical report, Clawson should not "work in an environment that exposes him to any silica dust." The medical panel opined "that an individual with an exposure history to crystalline silica leading to any degree of pneumoconiosis should avoid further exposure" because "the only effective treatment (and preventive measure) for this disorder is removal from exposure." And this conclusion is generally consistent with that of the other doctors who examined Clawson. *See supra* ¶¶ 4–5 & n.2.

¶21    Based on the medical panel's reasoning, as well as the reasoning of his doctors, Clawson should not work in an environment that exposes him to any silica dust because inhaling silica dust may cause his silicosis to worsen and become symptomatic. As a result, Clawson would not be able to enter any area at his work place where he might be exposed to silica dust. And if Clawson were unable to be in certain areas at work, that could potentially render him unable to work and, thus, make him permanently and totally disabled. Therefore, viewing the facts in this way, as did the ALJ and the dissenting board member, the silicosis may be the direct cause of a permanent total disability. Because the Board did not address the issue from this perspective in its decision, it should do so when it reconsiders the petition.

¶22    The Board also did not address in its decision whether Clawson is permanently and totally disabled. *See* Utah Code Ann. § 34A-2-413(1)(b)(ii), (c). In particular, the Board did not address whether Clawson is unable to work due to an impairment that "limit[s his] ability to do basic work activities" and "prevent[s him] from performing the essential functions of the work activities for which [he is] qualified" or whether Clawson can "perform other work reasonably available." *See id.* § 34A-2-413(1)(c)(ii)–(iv).

¶23    The ALJ's decision thoroughly addressed Clawson's inability to work, and Clawson and the Commission devoted significant attention to this issue in their briefs on appeal, but the Board did not reach the issue in its decision.[7] Resolution of this

---

7. The primary dispute about Clawson's ability to work seems to concern his ability to perform a job that Star Foundry offered to him in response to his doctor's opinion that he should not be exposed to any silica dust. According to Star Foundry, the offered job was the same job he performed before he took his medical leave of absence, except that he would no longer be required to go into the foundry. *See supra* ¶ 2 n.1. In response, Clawson explained that he was skeptical about whether he could perform any job at Star

(continued...)

issue is a fact-intensive process that invokes the Board's discretion. *See, e.g., LPI Servs. v. McGee*, 2009 UT 41, ¶ 27, 215 P.3d 135 (concluding that the Commission has been implicitly granted discretion by statute to determine whether a claimant can perform other work reasonably available); *Martinez v. Media–Paymaster Plus/Church of Jesus Christ of Latter-day Saints*, 2007 UT 42, ¶¶ 23, 30–33, 164 P.3d 384 (explaining that the statutory factors to determine whether a claimant is entitled to permanent total disability benefits call for factual determinations, and in particular determining whether the claimant can perform essential job functions or can perform other work reasonably available are factual determinations that should be made by the agency and reviewed under the substantial evidence standard). Thus, the initial determination of whether Clawson is able to work by analyzing the relevant statutory factors is best resolved by the Board. We therefore set aside the Board's decision and instruct it to reconsider the issue.

## III. Conclusion

¶24    In conclusion, we vacate the Board's decision and instruct the Board to reconsider Clawson's claim. The Board should decide whether Clawson's silicosis has resulted in or is itself a significant impairment due to it being a progressive disease that may be exacerbated by further exposure to silica dust. The Board should also decide whether Clawson's silicosis is the direct cause of a permanent total disability due to the fact that Clawson should not be exposed to any silica dust, which may potentially render him unable to work. The Board must also decide whether Clawson is,

---

7. (...continued)
Foundry without being exposed to silica dust—for example, even if he were only to work in the office building, he could still be exposed to silica dust that was brought into the office building on the clothing of other employees who worked in the foundry area. We do not reach this issue because it is a factual matter that must be resolved by the Board.

in fact, permanently and totally disabled due to an inability to work.

————