*This opinion is subject to revision before final publication in the Pacific Reporter*

**2017 UT 4**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

TYLER HERTZSKE,
*Appellee,*

*v.*

LINDA SNYDER,
*Appellant.*

No. 20150735
Filed January 18, 2017

On Direct Appeal

Third District, Salt Lake Dep't
The Honorable Su Chon
No. 140905282

Attorneys:

Michael E. Day, Nathan Whittaker, Salt Lake City, for appellee

Brian S. King, Salt Lake City, for appellant

JUSTICE DURHAM authored the opinion of the court, in which CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE LEE, JUSTICE HIMONAS, and JUSTICE PEARCE joined.

JUSTICE DURHAM, opinion of the Court:

## INTRODUCTION

¶1 Linda Snyder and Tyler Hertzske each claim sole entitlement to the death benefits of a life insurance policy (Policy) held by decedent Edward Hertzske. There are two issues presented in this case: (1) how Utah Code section 30-3-5(1)(e) should be interpreted in correlation with Utah Code section 75-2-804; and (2) the proper interpretation of "express terms" in section 75-2-804(2). The district court granted summary judgment to T. Hertzske, finding that there was "no genuine dispute as to any material fact" and that T. Hertzske was entitled to judgment as a matter of law. In support of the district court's conclusion, the judge held that where section

30-3-5(1)(e) was not considered or included in the divorce proceedings, it did not apply, and the Policy did not contain "express terms" that would except it from revocation under section 75-2-804(2). We affirm the district court's grant of summary judgment.

## BACKGROUND

¶2   In August 2004, while Linda Snyder and Edward Hertzske were engaged, E. Hertzske obtained a $500,000 life insurance policy from Lincoln Benefit Life Co. (Lincoln). The Policy named Ms. Snyder as the primary beneficiary and T. Hertzske as the secondary beneficiary. The terms of the Policy provided a method for naming new beneficiaries during E. Hertzske's lifetime, but were silent as to whether the designation of a spouse as a beneficiary would survive a divorce. The Policy instructions regarding beneficiaries states, in relevant part,

> The beneficiary will receive the death benefit when the insured dies and we have received due proof of death. The beneficiary is as stated in the app[lication], unless changed.
> . . . .
> We will pay the death benefit to the beneficiaries according to the most recent written instructions we have received from you.
> . . . .
> You may name new beneficiaries. We will provide a form to be signed. You must file it with us. Upon receipt, it is effective as of the date you signed the form, subject to any action we have taken before we received it.

¶3   Ms. Snyder and E. Hertzske were married in March 2005 and separated at the end of 2011. In May 2013, E. Hertzske executed his will disinheriting Ms. Snyder "to the fullest extent permitted by law."[1] In January 2014, E. Hertzske filed for divorce. During the

---

[1] Ms. Snyder argues that it was E. Hertzske's intention to leave her as the beneficiary on the Policy. However, she offers no support for this other than her self-serving statements. E. Hertzske's will seems to directly contradict this claim. Regardless, E. Hertzske's intention does not need to be established by evidentiary findings. Statutory language prescribes how a donor's intentions are interpreted.

> [Section] 75-2-804(2) attributes an intent to the donor based on an assessment of a typical donor's intention. . . . [T]his statutory attribution of intent is rebuttable. . . . 'by the

divorce proceedings neither E. Hertzske nor Ms. Snyder mentioned the Policy in the petition or subsequent divorce proceedings, nor did they identify or reference Utah Code section 30-3-5(1)(e). On May 6, 2014, the court issued a divorce decree that was silent as to the Policy and contained none of the language required by section 30-3-5(1)(e).[2]

¶4  E. Hertzske died at age sixty-eight, less than a month after the divorce decree was entered. Both Ms. Snyder and T. Hertzske declared an interest in the Policy funds. The district court ruled in favor of T. Hertzske. Ms. Snyder appeals the decision.[3] This court has jurisdiction over this appeal under Utah Code section 78A-3-102(3)(j).

**STANDARD OF REVIEW**

¶5  "Whether [a statute] applies . . . is a matter of statutory interpretation, which presents a question of law." *Vorher v. Henriod*, 2013 UT 10, ¶ 6, 297 P.3d 614 (second alteration in original) (citation omitted). In this appeal, "[w]e review the district court's decision de novo, according no deference to its legal determination." *State v. Steinly*, 2015 UT 15, ¶ 7, 345 P.3d 1182.

---

express terms of a governing instrument . . . , a court order, or a contract relating to the division of the marital estate.'"
*Stillman v. Teachers Ins. & Annuity Ass'n Coll. Ret. Equities Fund*, 343 F.3d 1311, 1318 (10th Cir. 2003).

[2] *See infra* ¶ 9.

[3] T. Hertzske argues that this court cannot assert jurisdiction over this appeal because Ms. Snyder's notice of appeal "does not specifically identify the order sought to be appealed" as required by Utah Rule of Appellate Procedure 3(d). However, the requirements of rule 3(d) allow an appellant to designate "the judgment or order, *or part thereof*, appealed from" provided the appellant is filing an appeal from a final order or judgment. UTAH R. APP. P. 3(a), (d) (emphasis added). Ms. Snyder filed an amended notice of appeal on August 28, 2015, stating that she "appeals from the Summary Judgment entered on May 3, 2015" as referenced in the "final judgment disposing of the case . . . on August 5, 2015." As Ms. Snyder referenced the specific part of the final judgment that she is appealing, she has met the burden required by the Rules of Appellate Procedure and this court asserts jurisdiction over this appeal.

**ANALYSIS**

¶6    T. Hertzske moved for summary judgment, and Ms. Snyder entered a cross-motion for summary judgment, each asserting that "his or her interest in the funds . . . [is] superior to that of the other party." Summary judgment is appropriate "if the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." UTAH R. CIV. P. 56(a). Neither T. Hertzske nor Ms. Snyder disputes the material facts in this case. The only dispute "is a matter of statutory interpretation, which presents a question of law." *Vorher v. Henriod*, 2013 UT 10, ¶ 6, 297 P.3d 614. Therefore, the court properly issued a summary judgment, which we review for correctness. *See McBroom v. Child*, 2016 UT 38, ¶ 18, ___ P.3d ___. We affirm the district court's holding "that the divorce revokes Ms. Snyder's status as a beneficiary" and that T. Hertzske is the sole remaining beneficiary holding an interest in the Policy.

¶7    We first explain the function of Utah Code section 75-2-804(2), as this statute's function is essential a determination of the parties' arguments. We then determine the applicability of Utah Code section 30-3-5(1)(e) to a beneficiary designation of a former spouse in a life insurance policy when there is no mention of the policy in the divorce proceedings or decree. Finally, we decide whether a life insurance policy's procedural directive for changing a beneficiary designation constitutes "express terms" as used in Utah Code section 75-2-804(2).[4]

### I. UTAH CODE SECTION 75-2-804(2) CREATES A REBUTTABLE PRESUMPTION THAT A BENEFICIARY DESIGNATION IN A LIFE INSURANCE POLICY IS REVOKED UPON DIVORCE

¶8    Under section 75-2-804(2) a beneficiary designation in a life insurance policy is revoked upon divorce unless the "express terms" of the policy as "a governing instrument, a court order, or a contract relating to the division of the marital estate" indicate otherwise. UTAH CODE § 75-2-804(2). This section "revokes any revocable . . .

---

4 Except as provided by the *express terms* of a governing instrument, a court order, or a contract relating to the division of the marital estate made between the divorced individuals before or after the marriage, divorce, or annulment, the divorce or annulment of a marriage . . . revokes any revocable . . . disposition or appointment of property made by a divorced individual to the individual's former spouse in a governing instrument . . . .

UTAH CODE § 75-2-804(2) (emphasis added).

disposition or appointment of property made by a divorced individual to the individual's former spouse in a governing instrument" unless the "express terms of a governing instrument, a court order, or a contract relating to the division of the marital estate" contains an exception. *Id.* In the definitions section, a "'[d]isposition or appointment of property' includes . . . any . . . benefit to a beneficiary designated in a governing instrument." *Id.* § 75-2-804(1)(a). A governing instrument is "a governing instrument executed by the divorced individual before the divorce . . . ." *Id.* § 75-2-804(1)(d). Read as a whole, the statute creates a rebuttable presumption that a beneficiary designation in a life insurance policy—a governing instrument—is revoked upon divorce. The presumption can be rebutted by express terms in the life insurance policy; a court order, including a decree of divorce; or a "contract relating to the division of the marital estate made between the divorced individuals."[5] *Id.* § 75-2-804(2).

## II. UTAH CODE SECTION 30-3-5(1)(e) DOES NOT APPLY IN THIS INSTANCE AND UTAH CODE 75-2-804 GOVERNS

¶9 This court's efforts at statutory interpretation attempt to give the meaning to a statute that the legislature intended. We use both the plain language of section 30-3-5(1)(e) and the function of section 30-3-5(1)(e) within the context of the entire statutory scheme to determine what the legislature intended when it enacted section 30-3-5(1)(e). We conclude that section 75-2-804 creates a rebuttable presumption that beneficiary designations of a former spouse on a life insurance policy are revoked in a divorce proceeding. This revocation can be rebutted using section 30-3-5(1)(e) in divorce proceedings only through the inclusion of the statutory language in the decree of divorce.

¶10 It has been a long-held practice of the courts in this state to "seek to give effect to the intent of the Legislature" when interpreting statutes. *State v. Rasabout*, 2015 UT 72, ¶ 10 & n.14, 356 P.3d 1258. The best indicator of legislative intent is the plain language of the statutes themselves. *Martinez v. Media-Paymaster Plus/Church of Jesus Christ of Latter-Day Saints*, 2007 UT 42, ¶ 46, 164 P.3d 384 ("[W]e look first to the statute's plain language with the primary objective of giving effect to the legislature's intent."). In looking at the relationship between sections 75-2-804 and 30-3-5(1)(e), we look at the provisions in the context of the entire statutory

---

[5] As there is no indication in the record that "a contract related to the division of the marital estate between the divorced individuals" exists, we do not address this exception in this opinion. UTAH CODE § 75-2-804(2).

scheme. *See LPI Servs. v. McGee*, 2009 UT 41, ¶ 11, 215 P.3d 135 ("We read the plain language of the statute as a whole[] and interpret its provisions in harmony with other statutes in the same chapter and related chapters." (alteration in original) (citation omitted)). Ms. Snyder urges us to look at the legislative history of section 30-3-5(1)(e), arguing that the legislature enacted this provision in order to "carv[e] out life insurance policies and annuities from the revocation-by-divorce prescription of § 75-2-804." However, we decline to look at the legislative history here because "[w]hen the plain meaning of the statute can be discerned from its language, no other interpretive tools are needed." *LPI Servs.*, 2009 UT 41, ¶ 11.

¶11 The notice provisions in section 30-3-5(1)(e) are clear, and the plain meaning of the statute can be determined from its language. A conditional departure from the presumption of revocation in section 75-2-804 is provided in section 30-3-5(1)(e). Where the judge is aware that "either party owns a life insurance policy or an annuity contract," the statute requires the judge issuing the decree of divorce to include

> an acknowledgement by the court that the owner:
> (i) has reviewed and updated, where appropriate, the list of beneficiaries;
> (ii) has affirmed that those listed as beneficiaries are in fact the intended beneficiaries after the divorce becomes final; and
> (iii) understands that if no changes are made to the policy or contract, the beneficiaries currently listed will receive any funds paid by the insurance company under the terms of the policy or contract.

UTAH CODE § 30-3-5(1)(e). When implemented, this statute reverses the presumption created in section 75-2-804 that the former spouse is revoked as a beneficiary on a life insurance policy in divorce proceedings. The statutory language in section 30-3-5(1)(e) is thus intended to supply the express terms of a court order fulfilling the exception in section 75-2-804. However, this occurs under section 30-3-5(1)(e) only when the judge "acknowledge[s]" that the party owning the life insurance policy has "reviewed and updated" the policy, "affirmed" the listed beneficiaries and the intended beneficiaries, and "understands" that the currently listed beneficiaries will receive the proceeds and then includes the statutory language in the decree. The plain language of section 30-3-5(1)(e) requires specific actions to reverse the presumption of revocation established in section 75-2-804.

¶12 The legislative intent of section 30-3-5(1)(e) is further clarified when read in context with section 75-2-804. "When interpreting a statute, we look first to the plain and ordinary meaning of its terms. But we do not interpret statutory provisions in isolation." *Andarko Petroleum Corp. v. Utah State Tax Comm'n*, 2015 UT 25, ¶ 11, 345 P.3d 648 (citation omitted). "[O]ur statutory interpretation requires that each part or section be construed in connection with every other part or section so as to produce a harmonious whole." *State v. Watkins*, 2013 UT 28, ¶ 29, 309 P.3d 209 (citation omitted). Thus, we look at section 30-3-5(1)(e) and section 75-2-804 together, as part of one statutory scheme, to "[d]etermin[e] which plausible statutory interpretation evinces the Legislature's intent." *Id.* We conclude that these sections work in harmony: section 75-2-804(2) allows for the "express terms of . . . a court order" as a means of rebuttal to its presumptive revocation; section 30-3-5(1)(e) legislates how one particular court order, the divorce decree, can use "express terms" to reverse the presumption created in section 75-2-804. We conclude that section 30-3-5(1)(e) rebuts the presumption of revocation in a life insurance policy in divorce proceedings *only* when the statutory language is expressly included in the decree of divorce.

¶13 The parties in the E. Hertzske and Ms. Snyder divorce did not take the required actions or obtain the express terms in the decree needed to reverse the presumption of revocation. The court below noted that "[i]n the underlying divorce case between . . . Mr. Edward Hertzske and Ms. Snyder no mention was ever made of any life insurance policies in the petition, findings or decree." Where the court was not aware of any existing life insurance policy, and the statutory language from section 30-3-5(1)(e) was not included in the decree of divorce, the presumption that the former spouse is revoked as a beneficiary remains. Therefore, section 75-2-804 applies here, and Ms. Snyder is presumptively revoked as a beneficiary on the Policy absent "express terms" in the Policy indicating otherwise. *See* UTAH CODE § 75-2-804(2).

### III. BARRING ANOTHER EXCEPTION, A LIFE INSURANCE POLICY MUST CONTAIN "EXPRESS TERMS" REFERRING TO DIVORCE IN ORDER FOR THE BENEFICIARY DESIGNATION OF A FORMER SPOUSE TO SURVIVE REVOCATION BY UTAH CODE SECTION 75-2-804(2)

¶14 The generic language found in almost every life insurance policy regarding the standard method to change a beneficiary does not constitute "express terms" enabling the beneficiary designation to survive revocation under section 75-2-804(2). It is standard practice for life insurance companies to "prescribe formalities to be

complied with for the change of beneficiaries." UTAH CODE § 31A-22-413(2)(a). This is not for the benefit of the policyholder or the beneficiaries, but "for the protection of the insurer." *Id.* Were we to adopt the notion that these formalities constitute express terms in a governing instrument, section 30-3-5(1)(e) would become superfluous. There would be no need for section 30-3-5(1)(e)'s specific method to rebut the presumption for life insurance policies in divorce decrees because all or nearly all policies would contain the express terms needed to meet the exception in section 75-2-804(2). The presumption against surplusage requires that we avoid interpreting one section of the Utah Code in a way that would render other sections unnecessary. *See Gressman v. State*, 2013 UT 63, ¶ 59, 323 P.3d 998 (Lee, J., dissenting). We therefore hold that a life insurance policy must contain language specifically stating that the beneficiary designation will remain in effect despite divorce to invoke the express terms exception for a governing instrument in section 75-2-804(2).

¶15 This is consistent with the court of appeals decision in *Malloy v. Malloy*, which used the "express terms" exception to uphold the district court's summary judgment in favor of not revoking the beneficiary designation upon divorce. 2012 UT App 294, ¶ 12, 288 P.3d 597. The insurance manual contained a provision that "[a] divorce does not invalidate a designation that names your former spouse as beneficiary. You need to complete a new [Designation of Beneficiary] to remove a former spouse." *Id.* ¶ 4 (alteration in original). The district court found that the language in the governing instrument—"the insurance policy and insurance manual, which is incorporated by reference in the election form"—contained the necessary express terms to effect the exception because the manual explicitly stated that the beneficiary designation would not be invalidated through divorce. *Id.* ¶ 5. Like other jurisdictions interpreting similar statutory language,[6] we interpret section 75-2-804(2) to require that the life insurance policy, as "the governing instrument[,] contain express terms referring to divorce, specifically stating that the beneficiary will remain as the designated beneficiary despite divorce" to invoke the "express terms of a governing instrument" exception. *Buchholz v. Storsve*, 740 N.W.2d 107, 112 (S.D. 2007).

¶16 Ms. Snyder's argument that the language prescribing the method to change a beneficiary constitutes "express terms" fails. The

---

[6] *See In re Estate of Lamparella*, 109 P.3d 959, 960 (Ariz. Ct. App. 2005); *Buchholz v. Storsve*, 740 N.W.2d 107, 112 (S.D. 2007); *Mearns v. Scharbach*, 12 P.3d 1048, 1053 (Wash. Ct. App. 2000).

policy at issue here did not contain any language referring to what would happen in the case of a divorce. The express terms exception in 75-2-804(2) is, therefore, not applicable in this case.

## CONCLUSION

¶17 Ms. Snyder has failed to rebut the presumption that her divorce from E. Hertzske revoked his designation of her as primary beneficiary on the Policy. Because of the lack of express terms necessary to claim an exception under 75-2-804(2) in either the decree of divorce or the Policy, Ms. Snyder's designation as primary beneficiary of the Policy was revoked upon divorce. We affirm the district court's grant of summary judgment to Appellee Tyler Hertzske.

_____