**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**February 14, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

EARTHGRAINS BAKING COMPANIES, INC.,

     Plaintiff - Appellee,

v.

LELAND SYCAMORE; SYCAMORE FAMILY BAKERY, INC.,

     Defendants.

------------------------------

SYCAMORE FAMILY LLC,

     Movant - Appellant.

No. 19-4174
(D.C. No. 2:09-CV-00523-DAK-DBP)
(D. Utah)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ**, Circuit Judge, **LUCERO**, Senior Circuit Judge, and **EID**, Circuit Judge.
_____

This appeal arises out of a lengthy effort by EarthGrains Baking Companies, Inc. ("EarthGrains"), to collect on its multimillion-dollar judgment against Leland Sycamore and the Sycamore Family Bakery. After two years of nonpayment, the district court entered a charging order against Leland's 48% interest in the Sycamore

_____

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Family LLC ("the LLC").  Although the charging order required the LLC to pay EarthGrains all distributions owed to Leland until the judgment against him was satisfied, the LLC failed to make any payment to EarthGrains for another four years. The district court found the LLC in contempt of court and appointed a receiver to inventory the distributions proportionately owed to EarthGrains based on the distributions made to LLC members since the charging order's entry.  The receiver submitted a report outlining the distributions owed to EarthGrains and asking the district court for permission to liquidate some of the LLC's real estate assets to satisfy these distributions.  Over the LLC's objections, the district court entered an order adopting the receiver's recommendations.

The LLC appeals, arguing that the district court overstepped its authority under Utah law by ordering the liquidation of the LLC's assets.  The LLC also asserts that the distribution calculations were clearly erroneous and that the receiver's recommendations should have been rejected because of his contacts with EarthGrains.  We must first decide, though, whether the LLC, a nonparty to the underlying suit, can appeal the district court's order.  We find that it can.  On the merits, we reject all the LLC's challenges except its argument about how the distributions were calculated.  Exercising jurisdiction under 28 U.S.C. § 1291, we affirm in part, reverse in part, and remand for further proceedings consistent with this order.

## I.

Leland Sycamore created Grandma Sycamore's Home-Maid Bread ("Grandma Sycamore's"), a popular line of baked goods which he sold to Metz Baking Company ("Metz") in 1998 for around $9.5 million. The sale encompassed all marks, goodwill, and trade secrets associated with Grandma Sycamore's, but Leland retained a limited license to sell the bread in several states—not including Utah. Later, Metz merged into the Sara Lee Corporation ("Sara Lee") and all rights under the agreement transferred to Sara Lee.

Leland put the money from the Grandma Sycamore's deal into his newly formed Sycamore Family LLC. The LLC's founding members were Leland, his wife Jeri, and their four children: Tyler, Nichole, Kristina, and Kami. Leland and Jeri held 48% membership interests while the children initially received 1% interests.[1] The LLC's business operations were limited to holding and managing the family's assets, including a multimillion-dollar mansion in Provo, Utah, known as the Sheffield Property. A decade later, Leland returned to the bread game.

In 2008, Leland bought a bakery, which became the Sycamore Family Bakery, by obtaining a $2,112,500 line of credit from Wells Fargo Bank. The LLC (not Leland) secured the line of credit by pledging the Sheffield Property as collateral. In exchange, Leland gave the LLC a promissory note for $2,112,500 and allegedly

---

[1] Although Leland and Jeri still hold 48% interests today, the Sycamores' daughter Kami has withdrawn from the LLC and the 4% remainder is now split between the other Sycamore children.

signed a document purporting to transfer all but 2% of his membership position in the LLC to his wife Jeri.  The latter transfer was ruled invalid in a separate lawsuit for failing to comply with the LLC's operating agreement, so Leland retains his 48% interest.  *See Sycamore Family LLC v. EarthGrains Baking Cos. Inc.*, No. 2:13–CV–00639–DN, 2014 WL 7261769, at *5 (D. Utah Dec. 18, 2014).

Leland's new business soon breached the Sara Lee license by selling homemade bread products under the Sycamore name in Utah.  Several cease-and-desist letters followed, but Leland and the Sycamore Family Bakery were undeterred.  In 2009, Sara Lee sued Leland and the Sycamore Family Bakery in the District of Utah for trademark infringement, unfair competition, cybersquatting, and breach of contract.  At that point, EarthGrains acquired the relevant interests from Sara Lee and replaced Sara Lee as the plaintiff.  In 2012, a jury awarded EarthGrains $2,333,129 in damages, $2,324,429 of which was attributed to Leland.  The district court doubled the award against Leland.  The district court also tripled the remaining damages attributed to the Sycamore Family Bakery—bringing the total damages award to $4,674,958, plus interest—and awarded EarthGrains $1,091,336.40 in attorney's fees.  We affirmed the district court's damages award enhancement.  *See EarthGrains Baking Cos. Inc. v. Sycamore Family Bakery, Inc.*, 573 F. App'x 676, 682 (10th Cir. 2014) (unpublished).

Two years passed and EarthGrains's judgment "remain[ed] completely unsatisfied."  Aple. App'x Vol. I at 78.  That was because all Leland's assets were housed in the family's LLC, beyond his creditors' reach.  As the district court

4

explained, "Leland and his family have worked together to make Leland appear to be judgment proof even though he is a multimillionaire" by "rearrang[ing] . . . finances to make it appear that Leland has no possessions and no income." Aplt. App'x Vol. IV at 1065. EarthGrains sought a charging order against Leland's 48% interest in the LLC. In 2014, a magistrate judge entered the charging order against the LLC, including the following instruction:

> Sycamore Family LLC . . . is ordered to pay directly to [EarthGrains] all assets, profits, proceeds, distributions, advances, draws, and any other remuneration due to [Leland] Sycamore as a result of his ownership interest in Sycamore Family LLC, including without limitation any transfers characterized or designated as payment for [Leland's] tax liabilities, salary, wages, reimbursements, or loans, until the [judgment against Leland] is satisfied in full.

Aplt. App'x Vol. I at 56. More than three months after it was served with the order, the LLC objected. The district court denied the objection as untimely.

By late 2018, "the LLC ha[d] not paid a penny" to EarthGrains, despite the charging order, and EarthGrains had not recovered anything on its judgment by other means. Aplt. App'x Vol. IV at 1072–73. EarthGrains had first complained about the LLC's noncompliance and moved for contempt sanctions in late 2014. The LLC opposed. After a hearing in which the LLC participated, the district court denied the motion without prejudice to permit further discovery. *See id.* at 1058 (noting that the district court "did not deny the [2014] motion . . . because of a failure to demonstrate contempt" and that "the information presented to the court" at the time "demonstrated a violation of the [c]harging [o]rder").

EarthGrains renewed its motion for contempt sanctions in July 2018, seeking the appointment of a receiver to account for and transfer to EarthGrains any wrongly withheld distributions, as well as to foreclose on Leland's membership interest in the LLC to the extent necessary to satisfy EarthGrains's judgment. The LLC again filed a brief in opposition and participated in the hearing on the motion. In November 2018, the district court granted EarthGrains's motion. The district court found by "clear and convincing evidence that Leland Sycamore, Jeri Sycamore, and the Sycamore Family LLC [we]re in willful contempt of the court's [c]harging [o]rder." *Id.* at 1066. For instance, the LLC's "operating agreement requires all LLC distributions to be distributed to the owners based on their percentage ownership." *Id.* at 1058. Yet the "LLC ha[d] made substantial distributions"—"run[ning] into the hundreds of thousands" of dollars—"to Jeri Sycamore without making the requisite payments to EarthGrains in proportion to Leland Sycamore's membership interests in the LLC." *Id.* at 1060. The LLC also "g[ave] family members de facto distributions" by "allowing [them] to live rent free in LLC homes and condominiums." *Id.* at 1060–61.

But the district court stated that "the exact amount of the contempt [wa]s unknown" because the LLC "fail[ed] to comply with the [c]harging [o]rder's requirements to turn over relevant financial information" and because of its "disregard for corporate structures or recordkeeping." *Id.* at 1066. Accordingly, the district court granted EarthGrains's request for a receiver—denying the LLC's competing request for a less powerful special master—and entered a separate order

6

appointing Wayne Klein as the LLC's receiver and outlining his powers and responsibilities.

In the receivership order, the district court gave the receiver "exclusive custody, control, and possession of" the LLC's assets. *Id.* at 1078. The district court ordered the receiver to inventory the LLC's assets and document all distributions made by the LLC since the charging order's entry in 2014, "including without limitation all distributions or transfers characterized as payment for tax liabilities, salary, wages, reimbursements, or loans." *Id.* at 1080. Based on those numbers, the receiver would calculate the proportional distributions owed to EarthGrains and pay EarthGrains with cash in the LLC's bank accounts. *See id.* ("For example, if the holder of a 1% membership interest in the Sycamore Family, LLC had received cash or rent benefits totaling $10,000 since March 6, 2014, Leland Sycamore's 48% membership interest entitles him to a distribution of $480,000."). If the LLC had insufficient cash to cover whatever it owed EarthGrains, the receiver could "seek leave from the court to initiate foreclosure proceedings" on Leland's 48% interest. *Id.* at 1083.

In July 2019, the receiver submitted his accounting of the distributions made by the LLC since the charging order was put in place and his corresponding calculation of the share owed to EarthGrains. At the outset, the receiver noted the LLC's "lack of cooperation," including providing "limited" and sometimes "demonstrably incorrect information." *Id.* at 1163–64. Nevertheless, the receiver

7

believed he had "sufficient information to prepare the accounting and perform the calculation mandated by" the receivership order. *Id.* at 1164.

In the receiver's view, not every dollar spent by the LLC during the relevant period was a distribution. The receiver explained that the LLC "own[ed] three general categories of assets: rental properties, investment properties, and financial investments (including cash)." *Id.* at 1165. The receiver outlined two kinds of expenditures related to these assets that were business costs, as opposed to distributions: $115,909.91 in expenses required to generate rental income and $666,286.32 in capital expenditures related to real estate. Next, the receiver identified three kinds of distributions made since the charging order's entry: cash distributions, imputed rent for real property occupied by the LLC members or their relatives, and "real property . . . being abandoned by the LLC for the benefit of a member." *Id.* at 1167.

Within the cash category, the receiver included "cash payments, salaries paid to managers of the LLC, and cash paid to others for the benefit of members (including legal expenses, vehicle lease payments, and real estate expenses)," as well as an approximately $175,000 loan to Kristina Sycamore, who holds a minor interest in the LLC. *Id.* at 1166. The legal fees catalogued by the receiver totaled several hundred thousand dollars. In the imputed rent category, the receiver calculated how much rental income the LLC would have obtained by renting property occupied by LLC members or their relatives.

The abandoned property category involved one of the LLC's more substantial holdings, the Sheffield Property. The receiver noted that the LLC pledged the Sheffield Property to secure a $2,112,500 line of credit that Leland took out in his personal capacity from Wells Fargo. After Leland defaulted, Wells Fargo began foreclosure proceedings. The receiver recommended treating the future loss of the property as a present distribution to Leland in the amount of the property's 2018 tax assessed value, $2,917,400.00. The receiver reasoned this would be appropriate because "the LLC is losing an asset because of the actions of one member and that member (Leland Sycamore) will benefit by obtaining forgiveness of a loan he owes to Wells Fargo Bank." *Id.* at 1171. This would reduce the LLC's value by approximately $2.9 million while benefiting Leland by $2,112,500, in the receiver's view.

Having calculated the LLC's total distributions since the charging order's entry, the receiver explained his proposed methodology for allocating them between the LLC's members. For each expenditure, the receiver "attempted to identify whether the distribution should be allocated to a particular LLC member or divided among all LLC members based on their percentage of ownership." *Id.* The receiver explained that he generally "had sufficient information to identify a particular beneficiary of each expenditure," and acknowledged Tyler Sycamore's assistance. *Id.* When the receiver could not ascertain a beneficiary, he divided the expenditure proportionately. The receiver allocated all LLC legal expenses to Leland alone.

In total, the receiver allocated $3,859,898.96 to Leland, $963,339.62 to Jeri, $175,319.31 to Kristina, $50,664.72 to Tyler, and $25,798.92 to Nichole.  Filtering these numbers through each Sycamore's membership percentage, the receiver extrapolated the total distributions the LLC should be viewed as having made since the charging order's entry.  Focusing on the largest of these sums, the receiver presented the district court with two potential amounts of distributions that could be imputed to Leland's 48% membership interest and therefore owed immediately to EarthGrains.  If Kristina's distributions—almost entirely consisting of her loan— were the touchstone, the LLC would owe EarthGrains $6,313,073.43 ("Kristina amount").  Alternatively, the receiver noted that if the district court "determine[d] not to treat the loan to Kristina Sycamore as a distribution, the highest assumed distributions" would come from Leland, so the LLC would owe EarthGrains his $3,859,898.96 ("Leland amount").  *Id.* at 1174.  Without explaining why, the receiver recommended against "imputing the loan to Kristina Sycamore as a distribution" and instead proposed adopting the Leland amount.  Aplt. App'x Vol. V at 1184.

The LLC had approximately $1,100,000 in cash, which the receiver recommended paying to EarthGrains immediately.  Of course, that would not be enough to cover even the lower Leland amount.  Because of the insufficient amount of cash, the inadequacy of anticipated future cash, the LLC's unwillingness to make required payments, the LLC's decision to own most of its assets in real estate, and the likelihood that foreclosing on Leland's interest in the LLC would be impractical and ineffective, the receiver asked to liquidate some of the LLC's real estate.  The

10

receiver asserted that "[t]his result is no different in substance than the existing authority granted to [him] . . . to use available cash of the LLC to pay to [EarthGrains] the equivalent of Leland Sycamore's distributions."  Aplt. App'x Vol. IV at 1177.  The receiver catalogued Jeri's involvement in the LLC's misconduct and proposed treating distributions imputed to Leland as distributions for her benefit, which would reduce distributions owed to Jeri and avoid exhausting the LLC's assets.  If the court disagreed and decided to protect Jeri's interest, the receiver sketched out several options for doing so.

EarthGrains moved to implement the receiver's recommendations. EarthGrains took the position that the first set of calculations, which included Kristina's loan, were correct, but it conceded that the resulting sum vastly exceeded the LLC's assets.  For that reason, EarthGrains agreed to "focus upon payment of the second calculation," the one based on distributions allocated to Leland.  Aplt. App'x Vol. V at 1208.  The LLC objected to the recommendations, contending among other theories that the district court should decline to implement the receiver's suggestions because the receiver had an undisclosed attorney-client relationship with EarthGrains.  Rejecting the LLC's arguments, the district court adopted the receiver's recommendations.

Choosing between the Kristina amount and the Leland amount, the district court observed that EarthGrains "agreed to focus on payment of the lesser amount," and it accordingly found that the LLC owed EarthGrains $3,859,898.96, the Leland amount.  *Id.* at 1246.  At the same time as it rejected the Kristina amount, however,

the district court stated that the receiver "properly treated a 'loan' to the Sycamores' daughter as a disguised distribution." *Id.* at 1247.

The district court did not discuss the Sheffield Property foreclosure issue in its order, but when the district court stated that it "adopt[ed] the [r]eceiver's recommendations," it indicated no exception or concern. *Id.* at 1248. The court ordered the receiver "to promptly pay EarthGrains $1.1 million in cash" and, agreeing with the receiver that foreclosing on Leland's interest would not be feasible, to "liquidate sufficient LLC real estate assets to allow for the payment of the remaining distributions, $2,759,898.96, to EarthGrains." *Id.* The LLC timely appealed. On May 27, 2020, a motions panel denied the LLC's request for a stay pending appeal.

## II.

Before reaching the merits of the LLC's appeal, we must determine whether it may appeal at all. EarthGrains argues that it cannot because it was a nonparty to the underlying suit and never sought to intervene. We disagree.

Although it is a "well settled" general rule that "only parties to a lawsuit, or those that properly become parties, may appeal an adverse judgment," *Marino v. Ortiz*, 484 U.S. 301, 304 (1988), this general rule is not without exception. Shortly after the Supreme Court announced this rule as settled, it "affirmed . . . '[t]he right of a nonparty to appeal an adjudication of contempt' . . . given the binding nature of that adjudication upon the interested nonparty." *Devlin v. Scardelletti*, 536 U.S. 1, 8 (2002) (brackets in original) (quoting *U.S. Catholic Conference v. Abortion Rights*

12

*Mobilization, Inc.*, 487 U.S. 72, 76 (1988)); *see also id.* at 7 (stating the Court "ha[s] never . . . restricted the right to appeal to named parties to the litigation").

We too have recognized exceptions to this general rule, such as "in certain cases where the non-party possesses a 'unique interest' in the outcome of the case and actively participates in the proceedings relating to that interest." *Abeyta v. City of Albuquerque*, 664 F.3d 792, 795 (10th Cir. 2011). In *Dietrich Corp. v. King Resources Co.*, for example, we entertained an appeal by an "aggrieved" nonparty contesting an order that "directly" altered his fee arrangement with the law firms involved in the case. 596 F.2d 422, 424 (10th Cir. 1979).[2] Elsewhere, we have recognized that "[t]hose who are the subject of civil contempt orders, sanctioned attorneys, class members who object to a judgment settling their rights—among others—may sometimes be parties to an appeal even though they were not named parties in the district court litigation." *Raley v. Hyundai Motor Co., Ltd.*, 642 F.3d 1271, 1275 (10th Cir. 2011) (collecting cases); *accord Frank v. Crawley Petroleum Corp.*, 992 F.3d 987, 993 (10th Cir. 2021).

That said, we have rejected appeals by nonparties even when they had a "unique interest." For instance, in *Abeyta v. City of Albuquerque*, the nonparty had a unique interest but had refused a request to join a previous appeal. 664 F.3d at 797. Because the nonparty "deliberately chose not to involve herself in the details until

---

[2] Although *Dietrich* was decided before *Marino*, we have since approvingly cited *Dietrich*. *See Raley v. Hyundai Motor Co., Ltd.*, 642 F.3d 1271, 1275 (10th Cir. 2011).

after we reached the merits" in the previous appeal and was requesting a do-over, we refused to entertain the nonparty's appeal in "[t]he interests of judicial economy." *Id.*

Under the circumstances here, we conclude an exception to the general rule applies. There can be no question that the LLC possesses a "unique interest" in its appeal. Just as in *Dietrich*, the district court's order directly and adversely affects the LLC's interests. The order permits the receiver to transfer LLC cash to EarthGrains, as well as to sell its real property and transfer the proceeds to EarthGrains. While a unique interest is not necessarily the end of the inquiry, *see id.*, and the LLC never sought to intervene, there is no apparent reason why the LLC should have intervened before final judgment. And once the charging order drew the LLC into the post-judgment proceedings, its interests were implicated and it "actively participate[d]." *Id.* at 795. The LLC opposed EarthGrains's two motions for contempt, participated in the hearings on those motions, objected to the receiver's recommendations, and opposed EarthGrains's motion to implement those recommendations. It also filed an objection to the charging order, albeit an untimely one. The LLC's involvement is quite unlike the wait-and-see tactic employed by the nonparty in *Abeyta*. Finally, although the LLC was not named as a party in the underlying case, it was named on the charging order, order appointing a receiver, and order implementing the receiver's recommendations. The LLC can bring this appeal and we will consider the issues it raises.

## III.

The LLC first argues that the district court exceeded its authority under the Utah Revised Uniform Limited Liability Company Act ("Utah LLC Act") by authorizing the receiver to liquidate some of the LLC's real estate assets and transfer the proceeds to EarthGrains to account for the distributions the LLC wrongly withheld from EarthGrains. We are unconvinced.

The district court assessed its power to order liquidation of the LLC's assets by analyzing the section of the Utah LLC Act under which the charging order was entered. *See* Utah Code Ann. § 48-3a-503. This was proper under the Federal Rules of Civil Procedure, which direct federal courts to follow state procedures when executing on a judgment, except to the extent that federal statutes apply. *See* Fed. R. Civ. P. 69(a)(1) ("The procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies.").[3] We review the district court's interpretation of the Utah LLC Act de novo. *See United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.*, 210 F.3d 1207, 1235 (10th Cir. 2000). Because we are interpreting a Utah statute, we give weight to Utah's rules of statutory construction. *See Phelps v. Hamilton*, 59 F.3d 1058, 1071 & n.23 (10th Cir. 1995). "When interpreting a statute, [Utah courts] look first to the plain and ordinary

---

[3] We express no opinion on the conformity of the underlying receivership with Rule 69 because the receiver's appointment is not an issue on appeal, and it need not be reached to resolve this case.

meaning of its terms." *Hertzske v. Snyder*, 390 P.3d 307, 312 (Utah 2017) (citation omitted). In Utah, "statutory interpretation requires that each part or section be construed in connection with every other part or section so as to produce a harmonious whole." *Id.* (citation omitted).

The Utah LLC Act's charging order section permits "a court [to] enter a charging order against the transferable interest of the judgment debtor for the unsatisfied amount of the judgment." Utah Code Ann. § 48-3a-503(1). A "transferable interest" is defined as "the right, as initially owned by a person in the person's capacity as a member, to receive distributions from a limited liability company in accordance with the operating agreement, whether or not the person remains a member or continues to own any part of the right." *Id.* § 48-3a-102(29). A charging order, in turn, has two parts. First, it "constitutes a lien on a judgment debtor's transferable interest." *Id.* § 48-3a-503(1). Second, "after the limited liability company has been served with the charging order," it "requires the limited liability company to pay over to the person to which the charging order was issued any distribution that otherwise would be paid to the judgment debtor." *Id.*

"To the extent necessary to effectuate the collection of distributions," the Utah LLC Act permits a court to "appoint a receiver of the distributions subject to the charging order, with the power to make all inquiries the judgment debtor might have made." *Id.* § 48-3a-503(2)(a). Notably, the Utah LLC Act also allows a court to "make all other orders necessary to give effect to the charging order." *Id.* § 48-3a-503(2)(b). The district court relied on this latter provision when it ordered the

16

receiver to liquidate the LLC's real estate assets to make up for the distributions the LLC failed to transfer to EarthGrains. Utah courts have not addressed the scope of this statute before, as far as we can tell, so whether this provision confers the power the district court thought it did is the question we must decide.

We think the district court was correct and see no reason to draw a line the plain language of the statute does not. The Utah LLC Act states that a "court may . . . make *all* other orders necessary to give effect to the charging order." *Id.* (emphasis added). That is exactly what the district court did here. A charging order "requires the limited liability company to pay over to the person to which the charging order was issued any distribution that otherwise would be paid to the judgment debtor." *Id.* § 48-3a-503(1). Consistent with this provision, the charging order here required the LLC "to pay directly to [EarthGrains] all . . . distributions . . . due to [Leland] Sycamore as a result of his ownership interest." Aplt. App'x Vol. I at 56. Because the charging order was frustrated by the LLC's failure to comply, however, the district court had to find a way to give it effect.

The district court started by appointing a receiver, which the law contemplates, to assess the situation. The receiver determined that foreclosing on Leland's membership interest would not be effective for several reasons. Instead, the receiver thought that transferring the LLC's cash to EarthGrains and selling off some of its real estate assets to transfer the proceeds to EarthGrains would "give effect to the charging order." Aplt. App'x Vol. V at 1247. The district court agreed, and its order adopting the receiver's recommendations implemented this solution. Considering the

17

extended contempt proceedings and rampant bad faith that sustained the nonpayment of the judgment below and led to this appeal, we think the statute's "necessary" standard was satisfied under the circumstances. Liquidating the LLC's assets fell within the bounds of the charging order provision.

The LLC presses a few contrary arguments, but we are unpersuaded. The LLC points to another part of the charging order statute, which states that "[t]his section provides the exclusive remedy by which a person seeking to enforce a judgment against a member or transferee may, in the capacity of judgment creditor, satisfy the judgment from the judgment debtor's transferable interest." Utah Code Ann. § 48-3a-503(8). The LLC argues that the "exclusive remedy" is found in § 48-3a-503(3), which provides that "the court may foreclose the lien and order the sale of the transferable interest" "[u]pon a showing that distributions under a charging order will not pay the judgment debt within a reasonable time." *Id.* § 48-3a-503(3). While it may be true that § 48-3a-503(8) limits the authority of a court to execute a judgment via a charging order, we see no reason why "[t]his section" should refer solely to one subsection of § 48-3a-503, rather than the statute as a whole, nor why the one subsection it would refer to would be § 48-3a-503(3). After all, the LLC's reading would eviscerate courts' explicit power to "appoint a receiver of the distributions subject to the charging order," which resides in a different subsection of the statute. *Id.* § 48-3a-503(2)(a). But we must construe "each part or section . . . in connection with every other part or section so as to produce a harmonious whole." *Hertzske*, 390 P.3d at 312. It is wrong to use § 48-3a-503(8) to read out of the statute broad

18

language permitting a court to "make all other orders necessary to give effect to the charging order." *Id.* § 48-3a-503(2)(b). That language is crucial to the statute's procedural design and effectiveness, as this case illustrates.

The LLC also argues that the terms "effectuate" and "give effect to" are "present and forward-looking." Aplt. Br. at 18. In the LLC's view, this language restricts a court to imposing measures that affect future distributions and prohibits measures redressing wrongly withheld past distributions. We find no such limitation in the statute or the definitions of these terms. *See Give effect to*, Webster's New World College Dictionary (4th ed. 2009) (defining "give effect to" as "to put into practice; make operative"); *Effectuate*, New Oxford Am. Dictionary (3d ed. 2010) (defining "effectuate" as "put into force or operation"). In fact, even the LLC admits that "[t]o 'give effect to' something is to make it work or to make it carry out its desired intent" such as "ensur[ing] that the judgment creditor is paid its share of the distributions." Aplt. Br. at 18. Even under the LLC's explanation of the terms, there is no "forward-looking" limitation.

Finally, the LLC argues that the district court exceeded its authority because a charging order constitutes a lien and the LLC will be forced to accept Leland's creditor, as well as because the order adopting the receiver's recommendations exceeded the scope of the district court's prior orders. These arguments are misplaced. With respect to the first, the LLC ignores the fact that a charging order is not just a lien on a transferable interest but also a "require[ment] [that] the limited liability company . . . pay over to the person to which the charging order was issued

19

any distribution that otherwise would be paid to the judgment debtor." Utah Code Ann. § 48-3a-503(1). And, as discussed above, the Utah LLC Act permits the district court to "make all other orders necessary to give effect to" that requirement. *Id.* § 48-3a-503(2)(b). As for whether the order "exceeded" the charging order and initial receivership order, that concern is beside the point. The charging order required the LLC to pay over to EarthGrains the distributions owed to Leland, and the district court put in place two orders to give effect to the charging order. This sequence of events is within the statute's contemplation. The broad language of the Utah LLC Act allowed the court to order the receiver to liquidate some of the LLC's real estate assets to pay for the wrongly withheld distributions, and the district court acted within its authority.

## IV.

The LLC argues that the imputed distribution calculation the district court adopted was error. The LLC's argument is principally concerned with the Sheffield Property, which increased Leland's imputed distributions by nearly $3 million. The LLC also contends that additional findings were erroneous, such as the allocation of all legal expenses to Leland. Although the LLC is wrong to suggest that issue preclusion applies, we agree that the district court clearly erred by including the Sheffield Property's 2018 assessed value within its calculation and remand for a redetermination of the sum the LLC owes EarthGrains.

**a.**

The LLC first invokes issue preclusion to argue that the district court could not characterize the loss of the Sheffield Property as a distribution. The LLC points to a declaratory judgment action in the District of Utah concerning Leland's purported transfer of 46% of his membership interest. In that suit, the district court concluded in 2015 that "the funds received by Leland Sycamore through the [Wells Fargo] line of credit and the encumbrance of the LLC's real property were a loan, and not a distribution." Aplt. App'x Vol. V at 1301. We find this argument without merit.

"[T]he preclusive effect given in federal court to a prior federal decision is subject to federal law." *Matosantos Commercial Corp. v. Applebee's Int'l, Inc.*, 245 F.3d 1203, 1207 (10th Cir. 2001) (citation omitted). Our review is de novo. *See In re Zwanziger*, 741 F.3d 74, 77 (10th Cir. 2014). Issue preclusion requires that "(1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party, or in privity with a party, to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action." *Matosantos*, 245 F.3d at 1207 (citation omitted). The LLC fails at the first step.

The LLC cannot invoke issue preclusion here because the question whether the loss of the Sheffield Property should be characterized as a distribution was simply not an issue in the declaratory judgment litigation. That case addressed only how to characterize "the funds received by Leland" from Wells Fargo "through the line of

21

credit and the encumbrance of the LLC's real property." Aplt. App'x Vol. V at 1301.

It did not address how to characterize the LLC's loss of the Sheffield Property should

Leland fail to repay Wells Fargo the loaned funds and Wells Fargo foreclose. The

receiver recognized this distinction: he characterized the funds received by Leland

from Wells Fargo and secured by the Sheffield Property as a "loan" but then went on

to explain why the "impending foreclosure" of the property "should be treated as a

distribution" to Leland. Aplt. App'x Vol. IV at 1170. Because the prior action did

not address or anticipate the question here, the issues are not identical and we reject

the LLC's issue preclusion argument at the first requirement. That means we need

not address the others. *See Dodge v. Cotter Corp.*, 203 F.3d 1190, 1198–1200 (10th

Cir. 2000).

**b.**

Next, we consider the district court's calculation of the distributions owed to

EarthGrains. Our review does not include the district court's choice to use the

Leland amount to assess the LLC's liability instead of the Kristina amount. Rather,

our review is limited to the computation of the Leland amount itself because that is

what the district court ordered paid. We review a district court's factual findings for

clear error. *See Mathis v. Huff & Puff Trucking, Inc.*, 787 F.3d 1297, 1305 (10th Cir.

2015). "A finding of fact is clearly erroneous if it is without factual support in the

record or if, after reviewing all the evidence, we are left with a definite and firm

conviction that a mistake has been made." *Id.* (citation omitted). "In conducting this

review, we view the evidence in the light most favorable to the district court's ruling

and must uphold any district court finding that is permissible in light of the evidence." *Id.* (citation omitted). To be sure, the district court adopted the receiver's recommended findings in calculating the imputed distributions owed to EarthGrains, but that does not change the standard of review. *See Flying J Inc. v. Comdata Network, Inc.*, 405 F.3d 821, 830 (10th Cir. 2005). We start by discussing the Sheffield Property's supposed abandonment, which made up the bulk of the Leland amount.

In its order adopting the receiver's recommendations, the district court did not mention the Sheffield Property at all. But adopting the receiver's recommendations necessarily included adopting the finding that the property's upcoming abandonment upon foreclosure should be treated as a past distribution to Leland of $2,917,400, the property's 2018 assessed value. The LLC argues that the district court was wrong to consider the Sheffield Property abandoned when it was not only retained by the LLC at the time of the order but subject to both an uncertain valuation and an injunction prohibiting its alienation. We agree. Although the district court has wide latitude to make factual findings supported by the record, it was clear error to find that the LLC had made a distribution that it had not yet made.

Among other responsibilities, the receiver was tasked with accounting for the distributions made by the LLC since the charging order's 2014 entry. Because of the LLC's history of evasion, the scope of the receivership order's definition of "distribution" was broad. *See* Aplt. App'x Vol. IV at 1080 (referring to "distributions to or for the benefit of any members of the Sycamore Family, LLC

since March 6, 2014, including without limitation all distributions or transfers characterized as payment for tax liabilities, salary, wages, reimbursements, or loans"). But even that definition had limits. After all, this aspect of the receivership was premised on distributions having been made in the past and proportionate distributions having been wrongly withheld from EarthGrains. Future, unknowable distributions bore no role in the receiver's calculus of events. Nonetheless, the receiver recommended counting a distribution that had not yet happened—the Sheffield Property's foreclosure—and the district court adopted that recommendation without even acknowledging the issue. But this theory of distribution was limited to the Sheffield Property's abandonment via foreclosure and that simply has not happened yet. The LLC cannot be held to account for unmade distributions, and it was error to find otherwise. Because "we are left with a definite and firm conviction that a mistake has been made," *Mathis*, 787 F.3d at 1305, we must reverse the adoption of the Leland amount, and the relief predicated upon it, to the extent that it included the 2018 assessed value of the Sheffield Property.

Even if the property does sell for the 2018 assessed value at foreclosure, we would agree with the LLC that a mistake was made.[4] That is because the receiver,

---

[4] Events since this case was argued suggest the Sheffield Property may sell for far less. To explain, we take judicial notice of the status reports that have been submitted by the receiver since the parties' records on appeal were filed. *See Banner Bank v. Smith*, No. 19-4131, 2022 WL 351161, at *3 n.3 (10th Cir. Feb. 7, 2022). In 2020, the receiver obtained several appraisals of the property. *See* Receiver's Sixth Status Report at 2–3, *EarthGrains Baking Cos., Inc. v. Sycamore Family Bakery Inc.*, No. 2:09-CV-00523-DAK-DBP (D. Utah) (Jan. 15, 2021), ECF No. 506. Because the property was in a state of disrepair, the appraisals averaged only $1,243,333. *See*

and therefore the district court, found without any analysis that the LLC would lose

the full value of the home and imputed the entire distribution to Leland.  But the

court also found that Leland owed less than the value of the Sheffield Property to

Wells Fargo.  At over $800,000, the difference between the Sheffield Property's 2018

assessed value and Leland's debt obligation is significant.  This discrepancy raises

obvious concerns about why the entire value would be lost.  Just as Leland would

likely be on the hook for any deficiency if the property sold for less than he owed on

the debt, *see* Utah Code Ann. § 57-1-32, Wells Fargo would probably not be able to

keep any surplus from a foreclosure sale.  The receiver seemed to recognize this

dynamic, telling the district court that surplus value could be "captured" by the LLC

if the foreclosure proceeds exceeded Leland's debt to Wells Fargo.  Aplt. App'x Vol.

V at 1254.  This illustrates the problem with the premature inclusion of the Sheffield

Property's foreclosure proceeds into the Leland amount.  Whatever the Sheffield

Property sells for, any imputed distribution likely cannot exceed the value that leaves

the LLC upon foreclosure.  While the sale value cannot be known until foreclosure, it

is unclear how an imputed distribution could significantly exceed Leland's debt.

Whichever way the dust settles, it has not settled yet, and it was clear error for the

---

*id.* at 2.  Based on Leland's line of credit exceeding even the highest appraisal value, the receiver's position became that the LLC "ha[d] no equity in the home," and that it should be abandoned.  *Id.* at 3.  As of January 2022, that remains the receiver's position.  *See* Receiver's Ninth Status Report at 2, *EarthGrains Baking Cos., Inc.*, No. 2:09-CV-00523-DAK-DBP (Jan. 24, 2022), ECF No. 511.  To the extent these filings foreshadow a low sale price, they illustrate the district court's error in holding the LLC to a valuation disconnected from the actual distribution that would occur upon foreclosure.

district court to adopt, without analysis or consideration, the receiver's finding that it had.

**c.**

The LLC also argues that Leland's "remaining imputed distributions are similarly unsupported or contradicted by facts in the record." Aplt. Br. at 17. First, the LLC contends that the receiver's categorization of certain real estate expenditures as distributions is "[w]ithout basis." *Id.* But the expenses in question were incurred while managing property occupied by LLC members. The receiver assessed imputed rent on the properties the LLC allowed its members to live in, making it perfectly logical to treat the expenses incurred maintaining those properties the same way. The receiver consistently distinguished between real estate expenses tied to the LLC's rental property and the expenses made for the benefit of individual members of the LLC. It was not error, let alone clear error, for the district court to adopt this aspect of the receiver's recommendation.

Second, the LLC argues that its legal expenses should not have been treated as distributions to Leland because they "were for the benefit of the LLC." *Id.* It appears that neither the receiver nor the district court seriously addressed this contention, but our standard of review is deferential. It is conceivable that the receiver and district court viewed all the LLC's legal expenses as made on Leland's account and for his benefit. After all, the receiver explained that he tried to figure out whether an expense should be allocated to one or several members, or split proportionately, and that he was able to do so for nearly every expenditure. The

receiver even credited Tyler Sycamore for helping with this part of his work. And, after doing that work, the receiver proposed allocating all legal fees to Leland. While we may have sought further detail from the receiver concerning the nature of the payments for legal fees if we were evaluating these findings on a blank slate, it was certainly possible for the receiver and the district court to find that the legal fees should all be allocated to Leland in full. The record supports that position, so the standard of review requires that we reject the argument that it was clear error to allocate the LLC's legal expenses to Leland alone.

## V.

Finally, the LLC argues that the district court erred by adopting the receiver's recommendations because the receiver should have been disqualified or, at least, further investigated. The LLC points to billing entries by EarthGrains lawyers indicating that they communicated with the receiver before the district court decided EarthGrains's motion to implement a receivership. The district court rejected this contention and adopted the recommendations anyway. We see no reason to reverse.

We must first determine the proper standard of review. The parties offer several and figuring out the right one requires focusing on this theory's procedural posture. The LLC never moved to disqualify the receiver below. Nor is this an appeal from the receiver's appointment. Instead, the LLC appeals the denial of its opposition to EarthGrains's motion to implement the receiver's recommendations, in which the LLC argued that the receiver "recently had an attorney-client relationship with [EarthGrains] that he did not disclose." Aple. App'x Vol. I at 247

(capitalization altered).  More specifically, the LLC contended that the relationship "may be grounds for disqualification," so the recommendations were "suspect and unreliable and should not be adopted until sufficient investigation has been conducted." *Id.* at 250.  The district court disagreed, noting that "[s]ome level of communication between the [r]eceiver and parties to the case is necessary and to be expected" and that "[n]othing out of the ordinary" happened here.  Aplt. App'x Vol. V at 1248.

According to the LLC, we review this decision de novo because it relied on the district court's misinterpretation of a state statute governing the appointment and disqualification of receivers.  EarthGrains, in contrast, suggests that we review a district court's factual finding whether an attorney-client relationship existed for clear error, and a decision on a motion to disqualify for abuse of discretion.  But the district court did not acknowledge the existence of a state statute concerning receivers, did not make an explicit factual finding (nor implicitly adopt a receiver-recommended finding) about the existence of an attorney-client relationship, and did not rule upon a motion to disqualify.  These dueling articulations of the standard of review all fail because they misunderstand the nature of this issue.  We think the LLC's blanket challenge to the district court's adoption of the receiver's recommendations, premised on an alleged conflict of interest, essentially amounts to a contention that the receiver was unfit and untrustworthy.  This Court reviews a decision to appoint a receiver for abuse of discretion, *SEC v. Scoville*, 913 F.3d 1204, 1213 (10th Cir. 2019), and we will apply that standard to this issue as well.  "A

28

district court abuses its discretion if its ruling is arbitrary, capricious, or whimsical, or arises from an error of law or a clear error of fact." *Hayes v. SkyWest Airlines, Inc.*, 12 F.4th 1186, 1194 (10th Cir. 2021).

According to the LLC, the entries in EarthGrains's lawyers' timesheets demonstrate that the receiver "provided legal advice" and "legal strategy" to EarthGrains, as well as helped EarthGrains "draft motions" before EarthGrains "s[ought] to appoint" him. Aplt. Br. at 22. Two of EarthGrains's attorneys submitted declarations to the district court stating that the receiver's work was independent from EarthGrains, that EarthGrains never sought legal advice from the receiver, that the receiver never provided EarthGrains with legal advice, and that there was no financial arrangement between the receiver and EarthGrains. While the attorneys acknowledged contact between the receiver and EarthGrains's counsel, they stated this contact was limited to conflicts checks and routine, impartial matters related to the receivership. The district court rejected the LLC's argument, finding "[n]othing out of the ordinary has occurred in this case" because "[s]ome level of communication between the [r]eceiver and parties . . . is necessary and to be expected." Aplt. App'x Vol. V at 1248. It found "no grounds for disqualifying the [r]eceiver or investigating his contacts with EarthGrains." *Id.*

Having considered the record, we conclude the district court did not abuse its discretion. The declarations support the commonsense notion that the receiver was not EarthGrains's lawyer, and suggest that he properly limited his contacts with EarthGrains to the receivership. As the district court recognized, contact between the

receiver and the parties to a case is expected. Aplt. App'x Vol. IV at 1248. It was neither arbitrary, capricious, nor whimsical to conclude that it would be standard practice for a potential receiver to consult with the party seeking his appointment. The district court was thus within its discretion to adopt the receiver's recommendations notwithstanding the LLC's objections.

## VI.

Utah law permitted the district court to require the LLC to liquidate its assets to afford the sum it owed EarthGrains based on actual and imputed distributions made since the charging order's entry. But federal law permitted the LLC to appeal. Upon considering the record on appeal, we can only conclude that the district court clearly erred by selecting a sum that consisted overwhelmingly of a distribution that had not yet been made, and that would likely be excessive by almost a million dollars even if it had. We AFFIRM in part, REVERSE in part, and REMAND for further proceedings consistent with this order.

Entered for the Court

Allison H. Eid
Circuit Judge